**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph P. O'BRIEN,
Defendant–Appellant.**

No. 87–2193.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1988.

Decided July 26, 1988.

Richard H. Parsons, Peoria, Ill., for defendant-appellant.

K. Tate Chambers, Asst. U.S. Atty., J. William Roberts, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before POSNER, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Defendant-appellant Joseph O'Brien appeals his conviction and sentence after entering a plea of guilty to one count of distribution of a controlled substance (lysergic acid diethylamide, or LSD), in violation of 21 U.S.C. § 841(a)(1) (1982 & Supp. IV 1986); one count of possession with intent to distribute a controlled substance (methylendoxy-amphetamine sulfate, or MDA), also in violation of 21 U.S.C. § 841(a)(1); and one count of income tax evasion, in violation of 26 U.S.C. § 7201. O'Brien contends that the government obtained his guilty plea after failing to keep promises made to O'Brien in exchange for his cooperation in a federal drug investigation. *See Santobello v. New York*, 404

U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (government must honor promises made to induce guilty plea). O'Brien also claims that he received ineffective assistance of counsel at his sentencing hearing when, in his opinion, his attorney failed to inform the trial judge of the full extent of the government's promises, allegedly leaving the sentencing judge unaware that the government had broken its promises. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (ineffective assistance of counsel at sentencing invalidated sentence); *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (ineffective assistance of counsel may invalidate guilty plea). Because we find no support in the record for either of O'Brien's contentions, his conviction and sentence are affirmed.

## FACTS

On August 14, 1986, O'Brien was arrested pursuant to a criminal complaint charging him with possession of approximately one pound of MDA. The next day, O'Brien and his attorney, Ray Choundry, met with DEA Special Agent Edward Halligan. At the meeting, O'Brien offered to act as an informant if his cooperation would help him, but the record does not reflect that O'Brien conditioned his offer on any specific terms. In reply, Halligan made no precise promises, but told O'Brien and Choundry that the DEA would bring O'Brien's cooperation to the attention of the United States Attorney's office. At this time O'Brien agreed to assist the government. O'Brien characterizes the outcome of his initial meeting with Halligan as an explicit oral agreement, but he fails to delineate what promises the government allegedly made at the meeting. Instead, in his brief, O'Brien merely states that

> "Various promises were made and relied upon by both parties to this oral agreement. O'Brien believed that as a first offender and upon his completion of dangerous undercover work for the government he would be allowed to plead to lesser offenses and receive a sentence which would not include lengthy, if any, incarceration."

On August 19, 1986, the United States Attorney's office sent O'Brien's attorney a "proffer letter" setting forth in detail the agreement between the government and O'Brien. According to the proffer letter, O'Brien agreed to act as an undercover informant to gather evidence in a federal drug investigation and agreed to provide the government with a "complete and candid statement ... concerning his knowledge of the distribution of drugs" and with "complete and truthful testimony ... in connection with any matter about which he had knowledge." In return, the government promised to "make no direct use of any such statement made or testimony given by Mr. O'Brien in order to bring criminal charges against him" and also agreed to evaluate O'Brien's cooperation and to consider it in determining what charges to bring against O'Brien and what penalty to seek. The government specifically reserved the right to exercise "full discretion in evaluating the nature and extent of Mr. O'Brien's cooperation and in deciding what benefits, if any, should be afforded Mr. O'Brien for such cooperation."

During late 1986 and early 1987, O'Brien worked with the government as an informant. His help resulted in several drug arrests. Once O'Brien ceased to act as an informant, the government, on March 30, 1987, filed a criminal information charging O'Brien with the three offenses to which he pled guilty. (O'Brien had waived his right to indictment by a grand jury.) O'Brien and the government then entered into a plea agreement, under which O'Brien agreed to plead guilty to distribution of LSD, possession of MDA with intent to distribute, and income tax evasion. In exchange, the government agreed to recommend to the sentencing judge that O'Brien be sentenced to seven years' imprisonment followed by a three-year special parole term for distributing LSD, a suspended sentence with five years' probation for possession of MDA with intent to distribute, and one year of imprisonment (to run concurrently with any other prison term) for income tax evasion. However, the plea agreement cautioned that "the sentencing

judge is neither a party to nor bound by an [sic] recommendation of the parties and is free to impose the maximum penalties allowed by statute." Both O'Brien and his attorney were given copies of the plea agreement and both reviewed and approved the same.

The district judge held a sentencing hearing on July 17, 1987. At the hearing, the government set forth and recited the precise sentencing recommendations set forth in the plea agreement. A copy of the written plea agreement was placed in the record and the trial judge reviewed its terms during the hearing. Neither O'Brien nor his attorney voiced any objection to the terms of the agreement at this time, although the court gave each an opportunity to do so. In addition, the court heard testimony from Attorney Choundry and from Special Agent Halligan concerning the alleged promises made by the government to O'Brien. Both Choundry and Halligan testified regarding the initial meeting with O'Brien. Neither stated that the government made any promise other than to call O'Brien's cooperation to the attention of the proper authorities. And, although the record does not contain a copy of the "proffer letter," Special Agent Halligan and Attorney Choundry testified regarding the letter and the contents contained therein including the depth and scope of any promises. Thus, the court clearly was made aware of the terms of the proffer letter. Finally, an Assistant United States Attorney commented positively on O'Brien's cooperation, crediting him with going "that extra mile. . . . including putting himself and his family in danger," while he acted as an informant. Prior to announcing its sentence, the court commented to the defendant:

> "Your attorneys, as I have said, have done a good job of presenting you in the best light to the Court.
>
> \*    \*    \*    \*    \*    \*
>
> Prior to coming on here this morning I had pretty much come to the conclusion that a sentence of seven years would depreciate the seriousness of these offenses too much. But I am persuaded

after hearing the arguments of your attorney and in terms of the government that the level of your cooperation was very unusual and that because of that it would be appropriate for me to reduce the figure that I had originally in mind."

The court then sentenced O'Brien to seven years in prison and three years' parole for distributing LSD, a suspended prison term with a five-year period of probation for possessing MDA with intent to distribute, and a two-year prison sentence (to run concurrently with the seven-year term) for tax evasion. The sentence imposed by the judge thus exceeded the government's recommendation (as set forth in the plea agreement) only by an additional year to be served on the tax evasion conviction.

## DISCUSSION

■■■ When the government induces a guilty plea by promising to make specific recommendations regarding sentencing, those promises must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Similarly, the government is required to honor its promises to consider specific mitigating circumstances, such as the cooperation of the defendant, when making sentencing recommendations pursuant to plea agreements. *United States v. Bowler*, 585 F.2d 851, 854–55 (7th Cir.1978); *see also United States v. Block*, 660 F.2d 1086 (5th Cir.1981); *United States v. Avery*, 621 F.2d 214 (5th Cir.1980); *Palermo v. Warden, Green Haven State Prison*, 545 F.2d 286 (2d Cir.1976). If the government has breached an agreement to make specific recommendations or to consider specific mitigating circumstances, federal courts have both the power and the duty to order appropriate relief. *Bowler*, 585 F.2d at 855–56. Depending on the circumstances of the individual case, such relief may include allowing the defendant to withdraw his or her guilty plea, *United States v. Hammerman*, 528 F.2d 326 (4th Cir.1975); directing specific performance of the plea agreement, *Bowler*, 585 F.2d at 856; *Geisser v. United States*, 513 F.2d 862 (5th Cir.1975); or ordering the imposition of a specific sentence if neither of the above

options would provide an appropriate remedy. *Correale v. United States,* 479 F.2d 944 (1st Cir.1973). However, based on the record before us, we do not agree with O'Brien that the government has broken its promises. O'Brien suggests two possibilities to the contrary. We will discuss them in turn.

■ Initially, O'Brien contends that his prison sentence exceeded his expectations under the oral agreement reached before the proffer letter was drafted. However, our review of the record reveals no promise or agreement on which O'Brien can reasonably base his argument. O'Brien does not question that the government honored its initial promise to consider his cooperation when it recommended a sentence, or its later promise to recommend the specific sentences set forth in the plea agreement. Instead, he asserts that the sentence recommended and the sentence imposed exceeded the sentence he "believed" he would receive, based on his meeting with Special Agent Halligan. However, nothing in the record supports O'Brien's belief.

Both Attorney Choundry and Special Agent Halligan testified at the sentencing hearing and they agreed that the government made no promises or assurances at the initial meeting, except to assure O'Brien very generally that his cooperation would certainly inure to his benefit in the future. Similarly, O'Brien's sentencing counsel expressly disavowed any claim that the government had failed to honor any express or implied promises. Furthermore O'Brien, when testifying at the hearing, made no mention much less did he complain of any unkept promises. Moreover, the proffer letter itself refutes O'Brien's claim, specifically reserving the government's right to prosecute O'Brien to the full extent of the law, and the record does not indicate that either O'Brien or his attorneys ever raised any objection to the terms of the letter. As the sentencing judge observed:

> "What occurred in this case, and I can understand it, is that this defendant was arrested. Both he and the government were interested in utilizing his coopera-tion to lead to other people. The agreement, as I understand it, was that if he cooperates, that cooperation would remain known to the United States Attorney's office and to the Court. And it was an implicit understanding that it would accrue to his benefit.
>
> Based on what I have heard, it appears to me that is what happened and that the defendant has received the benefit of that bargain. I don't believe that this is a—this is a classic example of a situation where it could be argued, for example, that his will had been overborne by the police or the agents by some improper promise or inducement and that consequently the statement should not be allowed to be used at all.
>
> The truth of the matter is, based on the record, that there were mutually receipted reasons for entering the agreement.... and *there is no indication that either side failed to live up to its part of the agreement.*"

(Emphasis added.) O'Brien has given us no information much less a valid reason to doubt the accuracy of the court's comments and analysis. O'Brien is correct in arguing that the government's promise need not be explicit to be enforceable; an implied promise will do. *Bowler,* 585 F.2d at 854. However, after a thorough examination of the record, we find no evidence that the government made an enforceable promise in this case. We find only O'Brien's unfounded and unilateral belief that he would receive little or no imprisonment. Without a promise, there can be no breach, so O'Brien's first argument fails. *Cf. Santobello,* 404 U.S. at 258, 92 S.Ct. at 496 (court enforced prosecutor's express agreement to make no recommendation as to sentence); *Bowler,* 585 F.2d at 854 (court enforced implicit promise to undertake good faith analysis of defendant's health and cooperation).

■ Second, O'Brien contends that the government used information gained through his own cooperation in charging him with income tax evasion. Thus, he claims the government breached the express language of the proffer letter, in

which the government agreed to make no direct use in charging him of the information gained from him as a result of his cooperation with the government. Neither party questions the existence of the promise; the proffer letter expressly bars direct use of any of O'Brien's statements or testimony against him. However, O'Brien fails to show a breach of this promise. Before this claim can succeed, O'Brien must demonstrate some factual basis for his argument by notifying the court of what information the government gained through his cooperation or how that information was used in charging him with income tax evasion. In his brief, O'Brien fails to set forth any facts or information that might lend a thread of validity to his argument. Nor has our independent examination of the record revealed any indication that the government breached its promise when it included the tax evasion charge in the plea agreement. There is simply no foundation in this record for finding that the tax evasion charge was based on information gained as a result of O'Brien's cooperation. O'Brien merely contends, without any support, that the government "used information gleaned from Defendant to make further charges against Defendant." Such a conclusory allegation cannot support a reversal.[1]

■ Our disposition of O'Brien's *Santobello* claim disposes of his *Strickland* claim, *a fortiori*. To establish constitutionally ineffective assistance of counsel, O'Brien must show both that counsel's performance fell below the level of "reasonable professional assistance" and that there is a "reasonable probability" that counsel's errors affected the outcome of the hearing. *Strickland v. Washington*, 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (*Strickland* standard applies to conduct of sentencing counsel). O'Brien claims that ineffective assistance of counsel at the sentencing

hearing deprived him of the benefit of his bargain with the government when: (1) his attorney failed to call the court's attention to the government's alleged promise of minimal imprisonment, and (2) his attorney failed to file a motion to dismiss the tax charge. However, because we find no support in this record for O'Brien's claims that the government breached its promises to him, we can hardly find that counsel's failure to protest the supposed breaches more vigorously deprived O'Brien of reasonable professional assistance. And, because O'Brien's *Santobello* claim is meritless, his attorneys could not have affected the outcome of the sentencing hearing by raising the issue before the sentencing judge. O'Brien thus fails both halves of the *Strickland* test.

We have reviewed each of O'Brien's claims and have determined that they are not supported in the record. The record fails to establish that the government made any promises to recommend specific sentences other than those clearly set forth in the plea agreement. Nor does it demonstrate that the government breached its promise and used any information against O'Brien developed as a result of his cooperation. And, because O'Brien's *Santobello* claims fail, the ineffective assistance of counsel claim must fail as well. The convictions and sentences imposed by the district court judge are

AFFIRMED.

---

**1.** At the sentencing hearing, O'Brien's counsel voiced concern that information gained through O'Brien's cooperation would be used against him in the future at parole hearings. However, O'Brien's counsel did not challenge the tax charge on this basis, but specifically disavowed any argument that the government breached its promises to O'Brien.