53 F.3d 334
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Rifki F. MSEITEF, Defendant/Appellant.
 No. 94-3580.
 United States Court of Appeals, Seventh Circuit.
 Argued April 27, 1995.
Decided May 3, 1995.
 
 Before Posner, Chief Judge, and Cummings and Bauer, Circuit Judges.
 
 ORDER
 
 1
 Rifki Mseitef was convicted by a jury of four counts of knowingly acquiring and possessing food stamp coupons in a manner contrary to Chapter 51 of the Food Stamp Programs Act and its regulations. 18 U.S.C. Sec. 2; 7 U.S.C. Sec. 2024(b). Mseitef appeals and we affirm.
 
 I. BACKGROUND
 
 2
 Agents of the U.S. Department of Agriculture, Office of the Inspector General, conducted an undercover investigation of suspected individuals and vendors involved with illegal food stamp trafficking. Late in 1991 and early in 1992 Special Agent Harold Stanford frequented Rainbow Super Foods in Milwaukee, Wisconsin, which is owned and managed by Mseitef.[1] On four separate occasions Agent Stanford negotiated a transfer of food stamps for cash with Michael Yarbough, an employee of Mseitef's.[2] Before completing the transaction, Yarbough would go into a back office, closing the door behind him, and soon return to give cash to Agent Stanford for the food stamps. At trial, Yarbough testified that he received approval and cash from Mseitef in the office on those occasions. Further, tape recordings of the four transactions were admitted at trial in which Yarbough told Agent Stanford that he had to check with his "boss" to complete the sale. Stanford also stated that he saw the person Yarbough called his boss, and identified Mseitef as that individual.
 
 
 3
 Over defendant's objection, admitted at trial were food stamp coupons recovered from the Federal Reserve after being deposited. Coupons from the first two transactions were transferred through Rainbow, while coupons from the other two transactions bore cancellation stamps from other stores. Special Agent Golightly prepared a summary of the food stamp redemptions, which the court admitted over defense objection. Agent Golightly testified that it is not unusual for food stamp traffickers to redeem the coupons elsewhere to avoid detection. However, he stated that there was no evidence that Rainbow was redeeming food stamps through other stores for that purpose.
 
 
 4
 Three months prior to trial, on May 10, 1994, Mseitef's counsel conducted a telephone conference regarding discovery with the government pursuant to Eastern District of Wisconsin Rule 6.02. The government agreed to provide Mseitef with copies of any financial documents or reports relevant to the food stamp redemption that would be presented at trial. This conference was followed by a letter on May 12, 1994 summarizing the discussion. In that letter, Mseitef's counsel requested "prior to trial, ... any financial documents or reports which will be presented at trial relevant to food stamp redemption at the Rainbow Grocery." On the Friday prior to trial, Mseitef's counsel made a specific request to see the redeemed food stamp coupons and they were provided the next day, two days prior to trial on August 8, 1994.
 
 
 5
 In a motion in limine to the court on the day of trial, Mseitef requested that the government be barred from introducing the redeemed stamps at trial, citing Federal Rule of Evidence 403 and Federal Rule of Criminal Procedure 16. Mseitef asserted that the redeemed stamps were potentially exculpatory and that the untimeliness of their production prevented Mseitef an opportunity to investigate and utilize the information. Mseitef's defense theory was that Michael Yarbough solely and independently engaged in the illegal activities, and Mseitef objected to the lack of opportunity to investigate any connection between Yarbough and the other stores.
 
 
 6
 Citing the government's open-file policy, the government opposed the motion. Mseitef received copies of all reports of interviews. However, because the actual physical evidence was in the case file held by the case agent, copies of the redeemed coupons were not included. The government asserted that once Mseitef made a specific request for the evidence, it was provided to him. The district court denied the motion in limine, concluding that the redeemed coupons were available to Mseitef upon request and that this evidence was not exculpatory.
 
 
 7
 Mseitef was convicted of all the counts by a jury. He was sentenced to sixty days of incarceration with work release privileges, followed by thirty days of home detention, and one year of probation. Mseitef was also ordered to pay $2,360 in restitution.
 
 III. DISCUSSION
 
 8
 Mseitef's claim on appeal is that the government failed to turn over in a timely manner exculpatory evidence, thereby violating his due process rights. We will only reverse if the district court abused its discretion. See United States v. Kozinski, 16 F.3d 795, 818 (7th Cir. 1994). The standard of review limits the court to determining whether to government's disclosure came so late as to prevent appellant from receiving a fair trial. United States v. Williams, 738 F.2d 172, 178 (7th Cir. 1984).
 
 
 9
 The Supreme Court held in Brady v. Maryland, 373 U.S. 83 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87; see Giglio v. United States, 405 U.S. 150 (1970). To make a successful claim under Brady, Mseitef "must establish (1) that the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material." United States v. Nash, 29 F.3d 1195, 1200 (7th Cir. 1994); United States v. Hartmann, 958 F.2d 774, 790 (7th Cir. 1992); see also Kyles v. Whitley, 1995 WL227644, 1195 U.S. LEXIS 2845 (April 19, 1995) (refining Brady doctrine and stressing the materiality requirements).
 
 
 10
 We conclude that no Brady violation occurred here. First, we agree with the district court that the evidence was available to Mseitef. The redeemed food stamps, although not in the case file of the United States Attorney, were available to Mseitef upon request, as evidenced by the specific request made the Friday before trial. It seems that if Mseitef indeed had believed the discovery conference and letter settled the issue of the production of the redeemed stamps, he should have been alarmed that they were not produced and should have contacted the government during the three intervening months requesting their transmittal. However, the facts make clear that the stamps were not specifically requested until the Friday prior to trial. Given their availability, we conclude that the redeemed coupons were not suppressed by the prosecution.
 
 
 11
 Further, it is far from clear that the evidence was favorable to the defense or material. Mseitef argues that had the evidence been provided earlier, it would have supported his theory that Yarbough was engaging in food stamp trafficking on his own. In his case in chief, Mseitef provided witness testimony as to Yarbough's use of alcohol and cocaine and his need for cash, and that Yarbough was known in the neighborhood as an independent dealer of illegal food stamps. This theory was argued to the jury who ultimately found him guilty. How the redeemed food stamps point to Yarbough is murky at best. Mseitef speculates that because the coupons were redeemed at stores with no connection to Mseitef points to Yarbough's guilt. Merely because Mseitef had family members engaged in the grocery business does not guarantee he would have redeemed them there. Speculation is not sufficient to establish that the government has suppressed evidence under Brady. United States v. Nolan, 910 F.2d 1553, 1558 (7th Cir. 1990), cert. denied, 499 U.S. 942 (1991). Without more linking Yarbough to the transactions, there is no support that the evidence is favorable to the defendant.[3]
 
 
 12
 Further, the timing does not indicate a Brady violation. The government must disclose exculpatory information, but it need not always do so before trial. United States v. Zambrana, 841 F.2d 1320, 1340 (7th Cir. 1988); United States v. Allain, 671 F.2d 248, 255 (7th Cir. 1982). Even evidence disclosed during trial meets Brady requirements as long as ultimate disclosure is made before it is too late for the defendant to make use of the evidence. Id. Here, the evidence was disclosed after specific inquiry and two days before trial. While failing to prevent the introduction of the stamps, Mseitef was able to present his theory and cross-examine Yarbough.
 
 
 13
 Turning to the question of materiality, evidence is material only if there is "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Nash, 29 F.3d at 1202; see United States v. Bagley, 473 U.S. 667 (1985) (reversal is required "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial"). Here, it is a question of timeliness rather than suppression. Even if the redeemed coupons had been disclosed to Mseitef earlier, the jury heard Mseitef's theory and we are of the opinion that the result of the proceeding would have been the same. The jury found Yarbough credible and believed Mseitef was illegally buying food stamp coupons.
 
 IV. CONCLUSION
 
 14
 Because the evidence was available to Mseitef, the prosecution did not violate Mseitef's rights. We AFFIRM the judgment of the district court.
 
 
 
 [1]
 The Department of Agriculture had received a complaint about food stamp trafficking at Rainbow from the Milwaukee Police Department
 
 
 [2]
 Food stamp may not be exchanged for cash except when cash is returned as change in a transaction in which coupons were accepted in payment for eligible food. 7 C.F.R. Sec. 278.2(a)
 
 
 [3]
 We note that Yarbough admitted a connection with one of the stores where the stamps were canceled. In fact, at the time of trial he was employed at that store