UNITED STATES of America,
Plaintiff–Appellee,

v.

Jennifer Anne FITZGERALD,
Defendant–Appellant.

No. 00–3750.

United States Court of Appeals,
Seventh Circuit.

Argued March 27, 2001.

Decided April 16, 2001.

Before Hon. RICHARD A. POSNER, Hon. DANIEL A. MANION, and Hon. ANN CLAIRE WILLIAMS, Circuit Judges.

ORDER

During April 1999, Jennifer Fitzgerald robbed the Mercantile Bank, in Alton, Illinois, and the Union Bank, in Hannibal, Illinois, of a little less than $12,500. She was captured the day of her last robbery, and charged with bank robbery under 18 U.S.C. § 2113(a), and use of a firearm during a crime of violence under 18 U.S.C. § 924(c)(1). She initially sought to plead an insanity defense, and moved the district court to increase her dosage of Prosac from 20 mg. per day to 80 mg.—the dosage she was receiving at the time of the offenses—to enable her psychiatrist to evaluate her mental state at the time of the offenses.

The district court denied the motion, finding "no medical documentation estab-

lishing that this change in Fitzgerald's course of treatment [was] advisable or even safe." Fitzgerald then withdrew her insanity defense and pled guilty. She now appeals her conviction, asserting that the district court's denial of her motion violated her due process rights as articulated by the Supreme Court in *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

■ Before we address the merits of her *Ake* claim, we first deal with the government's argument that Fitzgerald's unconditional plea of guilty waived this claim on appeal. A voluntary plea of guilty "waives all non-jurisdictional defenses including those constitutional violations not logically inconsistent with the valid establishment of factual guilt." *United States v. Nash,* 29 F.3d 1195, 1201 (7th Cir.1994); see also *United States v. Bell,* 70 F.3d 495, 496 (7th Cir.1995) (citing *Menna v. New York,* 423 U.S. 61, 63 n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975)). That Fitzgerald was prevented from establishing that she was not guilty by reason of insanity is precisely the type of violation logically inconsistent with the valid establishment of factual guilt that is excepted from the general waiver rule. We therefore reject the government's argument that Fitzgerald's claim is waived.

■ With that matter resolved, we turn to *Ake.* In *Ake,* the Supreme Court held that when an indigent defendant demonstrates that sanity at the time of the offense will be a significant factor at trial, the defendant must be provided access to a "competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake,* 470 U.S. at 83. In reaching that conclusion, the Court explained that to ensure due process, defen-dants must have "access to the raw materials integral to the building of an effective defense," which necessitates "identifying the 'basic tools of an adequate defense or appeal'" and "requir[ing] that such tools be provided to those defendants who cannot afford to pay for them." *Id.* at 77 (quoting *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971)). But exactly what tools are necessary to ensure due process under *Ake* and precisely how a court should identify them was left unresolved, and different formulations have evolved to respond to that concern. Justice Marshall suggested that when a defendant's "psychiatrist makes a plausible showing that certain testing is necessary for him to perform his *Ake* function, that testing must be considered one of 'the raw materials integral to the building of an effective defense' that the State must provide." *Vickers v. Arizona,* 497 U.S. 1033, 1035, 110 S.Ct. 3298, 111 L.Ed.2d 806 (1990) (Marshall, J., dissenting from denial of petition for writ of certiorari). Alternatively, the Tenth Circuit, in determining what basic tools are required, considered three factors: "(1) the effect on [the defendant's] private interest in the accuracy of the trial if the requested service is not provided; (2) the burden on the government's interest if the service is provided; and (3) the probable value of the additional service and the risk of error in the proceeding if such assistance is not offered." *Castro v. Ward,* 138 F.3d 810, 826 (10th Cir.1998) (alteration in original). Finally, in *Clisby v. Jones,* 960 F.2d 925 (11th Cir.1992), the Eleventh Circuit examined (1) the information before the trial court when it is alleged to have deprived the defendant of due process and (2) whether that information should have led the trial court to conclude that the defendant would probably not receive a

fair trial.[1] *Id.* at 929–30.

■ The court need not identify the appropriate standard here, because we are unable to conceive of a reasonable standard under which Fitzgerald could prevail. There is simply no evidence identifying the risks of increasing Fitzgerald's dosage fourfold, or even an indication of the universe of possible effects that such an action may have on her. According to Fitzgerald's own expert, who testified at her sentencing hearing in regards to the matter, "[t]he effect is unpredictable from one person to the next." Although Fitzgerald's trial counsel asserted in his motion that "defense experts advise counsel that this level of medication [*i.e.* 80 mg.] is required in order to replicate this defendant's mental processes at the time of the instant occurrence," he failed to present any affidavit or testimony from a psychiatrist that increasing Fitzgerald's medication was in fact necessary to perform his *Ake* function and that it was medically reasonable to do so. Without this type of evidence, we simply cannot say that Fitzgerald was denied a basic tool necessary to due process under *Ake.* We therefore affirm.

---

1. *Clisby* is really more of an ineffective assistance of psychiatrist claim, which we have rejected. see *Silagy v. Peters,* 905 F.2d 986, 1013 (7th Cir.1990), but we believe the standard announced in the Eleventh Circuit is one that applies uniformly to claims under *Ake* and the "basic tools" question we are asked to resolve.