**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 20 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROBERT DENNIS BUNNER,

    Defendant - Appellant.

No. 97-5066

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA.
(D.C. No. 94-CR-122-B)

---

Allen J. Litchfield, Assistant United States Attorney (Stephen C. Lewis, United States Attorney with him on the brief), Tulsa, Oklahoma, for Plaintiff - Appellee.

Stephen J. Greubel, Assistant Federal Public Defender (Stephen J. Knorr, Federal Public Defender with him on the brief), Tulsa, Oklahoma, for Defendant - Appellant.

---

Before BALDOCK, LOGAN, and LUCERO, Circuit Judges.

---

BALDOCK, Circuit Judge.

---

    Defendant Robert Dennis Bunner appeals the district court's order reinstating

criminal counts which the government previously dismissed pursuant to a plea agreement,

and the district court's subsequent sentence on his conditional guilty plea to violating 18 U.S.C. § 922(g). Defendant asserts that the district court erred: (1) by granting the government's motion to reinstate the dismissed counts; and (2) by enhancing his sentence four levels for possession of a firearm in connection with another felony offense pursuant to U.S.S.G. § 2K2.1(b)(5). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm.

## I.

A grand jury indicted Defendant for violating 21 U.S.C. § 841(a)(1), 18 U.S.C. § 924(c), 18 U.S.C. § 922(g) and 21 U.S.C. § 856. Pursuant to a plea agreement, Defendant pled guilty to using a firearm during the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c). In return, the government dismissed the remaining counts of the indictment. Finding sufficient evidence to support the plea, the district court sentenced defendant to a mandatory 60-month sentence. Defendant did not appeal. After Defendant served approximately three years, the Supreme Court decided Bailey v. United States, 116 S. Ct. 501 (1995). Under Bailey, Defendant's actions no longer constituted a § 924(c) violation. Accordingly, Defendant filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, which the district court granted.

Contending that Defendant breached his plea agreement by attacking his sentence, the government moved to reinstate the dismissed counts of the original indictment. The district court concluded that Defendant successfully repudiated the plea agreement and

2

granted the motion to reinstate the counts. Defendant then entered another conditional plea of guilty to violating of 18 U.S.C. § 922(g), reserving his right to appeal the district court's decision to reinstate the dismissed counts. Applying a four-level enhancement for possession or use of a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(5), the district court sentenced Defendant to 50 months imprisonment. The district court credited Defendant for the time he served pursuant to his invalid § 924(c) sentence.

## II.

Defendant's first issue on appeal requires us to determine whether the government may reinstate counts it dismissed pursuant to a plea agreement, when the district court, pursuant to a motion filed by a defendant, vacates that defendant's plea-bargain sentence pursuant to 28 U.S.C. § 2255 on the ground that the facts supporting the plea no longer amount to a crime. The plea agreement defines the government's obligations regarding the dismissed counts. Therefore, our inquiry must focus on whether, after Bailey and Defendant's successful § 2255 motion, the plea agreement between Defendant and the government continued to prohibit the government from reinstating the dismissed counts.

We review whether Defendant violated the terms of the plea agreement *de novo*, See United States v. Belt, 89 F.3d 710, 713 (10th Cir. 1996), and construe the plea agreement according to principles of contract law. United States v. Veri, 108 F.3d 1311, 1313 (10th Cir. 1997). We first examine the nature of the plea agreement itself. United

3

States v. Rockwell Intern. Corp., 124 F.3d 1194, 1199 (10th Cir. 1997). Then, we analyze the plea agreement based upon Defendant's reasonable understanding at the time he entered the plea agreement. Id. Although we give credence to the plain language of the plea agreement, we will not construe the language so literally that the purpose of the plea agreement is frustrated. Id. Accordingly, we consider terms implied by the plea agreement as well as those expressly provided. See Id.

Defendant complains that the district court erred in allowing the government to reinstate the previously dismissed charges on the basis that he repudiated his plea agreement by successfully attacking his conviction via 28 U.S.C. § 2255. Specifically, Defendant urges this court to adopt the reasoning set forth in United States v. Sandoval-Lopez, 122 F.3d 797 (9th Cir. 1997), and several district court decisions[1] which hold that a defendant does not breach his plea agreement by attacking his conviction on the ground that the conduct to which he pled guilty is no longer a crime. For the following reasons, we decline to follow Sandoval-Lopez and conclude that the district court properly allowed the government to reinstate the counts previously dismissed based

---

[1] See Rodriguez v. United States, 933 F. Supp. 279 (S.D.N.Y. 1996); United States v. Gaither, 926 F. Supp. 50 (M.D. Pa. 1996); DiCesare v. United States, 646 F. Supp. 544 (C.D. Ca. 1986); but see United States v. Barron, 940 F. Supp. 1489 (D. Alaska 1996), aff'd on other grounds, 127 F.3d 890 (9th Cir. 1997); United States v. Viera, 931 F. Supp. 1224 (M.D. Pa. 1996); United States v. Reguer, 901 F. Supp. 525 (E.D.N.Y. 1995), rev'd on other grounds sub nom, United States v. Podde, 105 F.3d 813 (2d Cir. 1997).

4

on its agreement with Defendant.[2]

A.

In <u>Sandoval-Lopez</u>, the Ninth Circuit faced an issue directly analogous to the one presented in this case. The government charged the defendants with, *inter alia*, violating 18 U.S.C. § 924(c)(1). Instead of leaving their fate to a jury, the defendants entered plea agreements with the government whereby the government dropped several of the charges in return for the defendants' pleas of guilty to § 924(c)(1). The parties also agreed that the government would recommend that defendants be sentenced to what they believed was the mandatory minimum sentence of five years per count. Subsequently, the United States Supreme Court decided <u>Bailey</u>. After <u>Bailey</u>, the facts underlying the defendants' pleas no longer supported their convictions. The defendants filed a motion to vacate their sentences pursuant to 28 U.S.C. § 2255, which the district court granted. The government, alleging that the defendants breached their plea agreements, moved to reinstate the counts dismissed pursuant to the agreements. The district court agreed, and

---

[2]      Notably, shortly after it decided <u>Sandoval-Lopez</u>, the Ninth Circuit reached the opposite result on similar facts in <u>United States v. Barron</u>, 128 F.3d 890 (9th Cir. 1997). Although difficult to distinguish factually, the two panels were apparently faced with different issues. In <u>Barron</u>, the government argued and the court agreed that a district court has discretion under 28 U.S.C. § 2255 to rescind a plea agreement when a defendant successfully attacks a component of his plea agreement pursuant to § 2255. In <u>Sandoval-Lopez</u>, however, the litigants presented the case in terms of a contract law analysis. As in <u>Sandoval-Lopez</u>, the litigants in this case argue contract principles in support of their positions. Therefore, we express no opinion on the logic of <u>Barron</u> and address the parties' arguments as presented.

5

issued an order reinstating the dismissed charges.

On appeal, the Ninth Circuit determined that in order for a defendant to breach his plea agreement by filing a § 2255 petition, the agreement must expressly prohibit the defendant from collaterally attacking his sentence. The court construed the agreement against the government and concluded that the defendants did not waive their right to attack their sentences pursuant to § 2255. The court held that the defendants did not violate their plea agreements and reversed the district court's decision allowing the government to reinstate the previously dismissed counts against the defendants.

The logic Defendant advances in support of his argument is basically the same as that set forth in <u>Sandoval-Lopez</u>. Defendant argues that because he did not breach the plea agreement, the government must be held to its promise not to prosecute him on the counts it dismissed pursuant to the agreement. Defendant contends the district court erred by not specifically enforcing the agreement and granting the government's request to reinstate the previously dismissed counts against him.

A fair and objective reading of the plea agreement suggests that Defendant agreed to plead guilty to § 924(c) and not to appeal certain motions decided by the district court. In return, the government agreed to dismiss the remaining counts against Defendant. Nothing in the agreement suggests that Defendant relinquished the right to attack his sentence under § 2255. Thus, we agree with Defendant that the district court incorrectly determined that he repudiated the agreement. However, we cannot adopt the approach

followed in <u>Sandoval-Lopez</u>, which requires specific enforcement of the agreement without determining the ultimate effect of Defendant's actions and the <u>Bailey</u> decision on the plea agreement.

Simply put, the <u>Sandoval-Lopez</u> court stopped too soon. After determining that the defendants did not breach or repudiate their plea agreements, the court specifically enforced the agreements and reversed the district court's order reinstating the dismissed counts. The court made no explicit determination regarding the effect of the defendants' successful § 2255 motion on the government's plea agreement obligations. Without this determination, specific enforcement was premature. Certainly, a finding that the § 2255 motion did not effect the government's obligations under the agreement would support the court's order of specific performance. However, if the defendants' actions created an intervening impracticality or frustrated the agreement's purpose, then the government's obligations under the agreement were likely altered. Accordingly, guided by principles of contract law, we must decide which, if any, of the government's duties under the plea agreement remained intact after <u>Bailey</u> and Defendant's subsequent § 2255 motion.

B.

When two parties enter into a contract, each has an object or purpose for which he joins the transaction. <u>See</u> Arthur Linton Corbin, <u>Corbin on Contracts</u> § 1353 (1962). These purposes form the basis of the agreement, absent which neither party would consent to be bound. Occasionally, however, through no fault of either party, a

7

reasonably unforeseeable event intervenes, destroying the basis of the contract and creating a situation where performance by one party will no longer give the receiving party what induced him to enter into the contract in the first place. See United States v. General Douglas MacArthur Senior Village, Inc., 508 F.2d 377, 381 (2d Cir. 1974). Although the supervening event does not render performance impossible, one party's performance becomes virtually worthless to the other. See Restatement 2d Contracts § 265 (1981)  When this occurs, the aggrieved party is discharged from performing under the doctrine of frustration of purpose. Corbin, supra, at § 1353.

For a party's contractual obligations to be discharged under the frustration of purpose doctrine, several elements must be present. First, the frustrated purpose must have been "so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." Restatement 2d Contracts § 265 cmt. a. Second, the frustration must be such that the intervening event cannot fairly be regarded as within the risks the frustrated party assumed under the contract. Id. Finally, "the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made." Id.

Defendant and the government entered the plea agreement to avoid the uncertainty of a jury verdict. Defendant hoped to subvert the risk that a jury would convict him on all four counts with which he was charged. The government, on the other hand, entered the agreement to ensure that Defendant served time for violating § 924(c). A basic

8

assumption underlying the parties' purposes was their belief that the conduct Defendant pled guilty to amounted to a violation of § 924(c). Absent this assumption, neither party would have entered into the December 16, 1994 plea agreement. Indeed, under Fed. R. Crim. Proc. 11(f), the district court could not enter judgment on Defendant's plea absent a finding that a factual basis supported the § 924(c) violation.

Subsequent to entering the agreement, an intervening change in the law destroyed the factual basis supporting Defendant's conviction.[3] At this point, Defendant had two options. He could perform under the agreement as though Bailey were never decided or he could move to vacate his sentence pursuant to § 2255 on the ground that he pled guilty to something that wasn't a crime. On his own volition, Defendant chose the latter and the district court vacated his sentence.

Our inquiry now shifts to the effect of Bailey and Defendant's successful § 2255 motion on the government's obligations. The district court's decision ultimately resulted in Defendant being relieved of his obligations under the plea agreement. Therefore, although the parties were technically able to perform according to the letter of the agreement, Defendant's performance, for all practical purposes, became worthless to the

---

[3] In reaching its conclusion that the defendants did not breach their plea agreements, the Sandoval-Lopez court required the government to shoulder the entire risk of a change in the law where the agreement is silent as to that issue. While we recognize Defendants are under some pressure to enter plea agreements, we believe a fair construction of the plea agreement before us requires that Defendant and the government share the risk that a subsequent change in the law may undermine the basis of the agreement.

government. This resulted in the underlying purpose of the agreement being frustrated and the basis of the government's bargain being destroyed. Thus, under the frustration of purpose doctrine, the government's plea agreement obligations became dischargeable. The government now faced a choice. It could perform according to the letter of the plea agreement or it could seek discharge of its duties on the basis that intervening events frustrated its ultimate objective. See Corbin, supra at § 1353. The government chose to be discharged and return the parties to the positions they occupied before Defendant entered his guilty plea.

Upon restoration of the status quo ante[4], the plea agreement no longer bound the parties. Therefore, no obligation remained which prohibited the government from reinstating the previously dismissed charges. Accordingly, we affirm, albeit on different grounds, the district court's decision allowing the government to reinstate the previously dismissed charges against Defendant. See United States v. Knox, 124 F.3d 1360, 1362 (10th Cir. 1997) (court of appeals may affirm on any ground supported by the record).

### III.

After the district court vacated Defendant's § 924(c) sentence and allowed the government to reinstate the dismissed counts, Defendant entered a conditional plea of

---

[4] Defendant argues that because he has served approximately three years of his sentence, restoration of the status quo ante is impossible. This argument is without merit. When the district court sentenced Defendant in regards to his new conditional plea of guilty to violating § 922(g), it gave him full credit for time served, including good time credit. Thus, the status quo ante has been restored.

10

guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

Applying a four-level enhancement for using or possessing a firearm in connection with

another felony offense under U.S.S.G. § 2K2.1(b)(5), the district court sentenced

Defendant to 50 months imprisonment. Defendant maintains that the standard for

enhancement and the standard for violating § 924(c) are identical, and that under such

standard, the evidence before the district court did not support the four-level enhancement

under U.S.S.G. § 2K2.1(b)(5). We disagree.

Under U.S.S.G. § 2K2.1(b)(5), the district court may enhance a defendant's

sentence by four levels if it finds the defendant "used or *possessed*[5] any firearm . . . in

connection with another felony offense. . . ." (emphasis added). Section 2K2.1(b)(5)

provides little guidance beyond its plain language regarding the nexus required between

firearm possession and the required felony offense. Therefore, we have noted that

judicial interpretations of 18 U.S.C. § 924(c) provide "some guidance" in construing

§ 2K2.1(b)(5)'s "in connection with" requirement. United States v. Gomez-Arrellano,

5 F.3d 464, 466  (10th Cir. 1993). We have rejected, however, any assertion that judicial

---

[5]     The primary thrust of Defendant's argument is that under Gomez-Arrellano, we are bound by Bailey's construction of "use" as applied to § 924(c) when we interpret § 2K2.1(b)(5). The plain language of § 2K2.1(b)(5) makes clear that the district court may enhance a defendant's sentence under the section when a firearm is "used or possessed" in connection with another felony offense. Bailey dealt strictly with "use" of a firearm. Thus, adopting Defendant's argument would render the guidelines' insertion of the words  "or possessed" meaningless. "We will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous." Osborne v. Babbitt, 61 F.3d 810, 813 (10th Cir. 1995).

11

precedent interpreting § 924(c) controls when a sentence may be enhanced under § 2K2.1(b)(5).  United States v. Sanders, 990 F.2d 582, 585 (10th Cir. 1993).  Guided by these principles, we have generally held that if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under § 2K2.1(b)(5) is appropriate. See Gomez-Arrellano, 5 F.3d at 466 (citing Smith v.  United States, 508 U.S. 223, 238 (1993)).

Handguns are widely recognized as a tool of the drug dealers trade.  United States v.  Wyatt, 102 F.3d 241, 248 (7th Cir. 1996).  Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5).  Gomez-Arrellano, 5 F.3d at 467.  The evidence before the district court sufficiently supported this nexus.  Acting on an informant's tip, the police made a controlled purchase of methamphetamine from a white male in defendant's residence.  Within seventy-two hours, pursuant to a warrant, the police searched defendant's residence.  While searching defendant's bedroom, officers discovered methamphetamine, items consistent with drug distribution, and various firearms including a loaded Smith and Wesson .357 magnum.  The district court considered the location of the .357 magnum, its character as a handgun, its availability for use and its proximity to the drugs and drug paraphernalia in finding that the gun was possessed "in connection with" defendant's distribution of methamphetamine.  Under the circumstances of this case, we conclude the .357 magnum found in defendant's bedroom had, at a minimum,

12

the potential to facilitate the drug trafficking offense.  Accordingly, the district court's finding that the gun was possessed "in connection with" the drug offense is not clearly erroneous and its enhancement under § 2K2.1(b)(5) was appropriate.


AFFIRMED.