UNITED STATES of America,
Plaintiff–Appellee,

v.

Andre L. WILLIAMS, Defendant–
Appellant.

No. 99–2599.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 5, 1999.

Decided Dec. 7, 1999.

Thomas P. Schneider (submitted), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Michael O. Bohren, Marola & Bohren, Milwaukee, WI, for Defendant–Appellant.

Before BAUER, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Andre Williams appeals his sentence entered after a guilty plea to two counts of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and two counts of providing false information on an application to purchase a firearm, 18 U.S.C. § 922(a)(6). For the reasons stated herein, we affirm in part and vacate and remand in part.

## I. BACKGROUND

On April 9, 1998, and again on July 22, 1998, Andre Williams filled out applications to obtain firearms from a licensed dealer. On those applications he knowingly made false statements concerning his status as a convicted felon. On April 14, 1998, and again on July 24, 1998, Williams obtained firearms from a licensed dealer as a result of the false statements made on his applications. On August 18, 1998, an indictment was returned against Williams charging him with two counts of violating 18 U.S.C. § 922(a)(6), for making a false written statement intended to deceive a lawful firearms dealer with respect to a fact material to the lawfulness of the sale of a firearm ("False Statement"), and two counts of violating 18 U.S.C. § 922(g)(1), for being a felon in possession of a firearm ("Felon in Possession").

On October 16, 1998, Williams entered into a plea agreement with the government ("Agreement"). During the negotiations, Williams requested that the two Felon in Possession counts be dropped so that they would not count against him for armed career criminal status, but the government refused. At this time no party thought Williams was eligible to be sentenced as an armed career criminal, and it was assumed that the additional counts would not affect the length of his sentence. Both the government and Williams conducted the plea negotiations with the understanding that Williams' maximum sentence for the four counts was the statutory maximum of ten years. This understanding was reflected in the language of the plea agreement which stated:

> "4. The parties understand and agree that the offenses to which the defendant will plead guilty, carry the following maximum terms of imprisonment and fines:
>
> > Counts 1, 2, 3, and 4: Imprisonment for up to ten years, . . . ."

The Agreement also contained language stating that the sentencing judge was not a party to the Agreement and would sentence Williams according to the applicable Sentencing Guidelines ("Guidelines") and statutes "up to the maximum penalties set forth in paragraph 4 above."

In the Agreement, Williams promised to cooperate with the government to the full extent of his ability and to plead guilty to the four counts of the indictment. In return, the government promised to recommend a three-level decrease in Williams' Sentencing Guideline level for acceptance of responsibility under U.S.S.G. § 3E1.1 and to make a motion for a downward departure under U.S.S.G. § 5K1.1 for substantial assistance to the government. If the judge agreed to apply these decreases, all parties thought Williams' sentencing range would be 57–71 months. Also in the Agreement, Williams waived his right to see the presentencing report ("PSR") prior to sentencing.

After signing the agreement, Williams provided information regarding criminal activity to the government at two interviews and testified at a grand jury proceeding. On October 20, 1998, Williams entered a guilty plea to all four counts of the indictment against him. The probation officer then revealed that the PSR indicated Williams was an armed career criminal because a 1982 juvenile conviction for armed robbery was for four counts, and each count was considered separately for purposes of determining armed career criminal status. *See* U.S.S.G. § 4B1.4 and commentary. Because Williams was considered an armed career criminal, his sentence was elevated to fifteen years to life under the Guidelines, instead of the assumed maximum ten years upon which the plea agreement was based.

Because all parties had signed the Agreement under a mutual mistake of fact, the district court concluded that the contract was voidable and permitted Williams to withdraw his guilty pleas. Williams, however, pointed out that since he had already helped the government, letting him withdraw his plea did him no good because he no longer had any bargaining power to renegotiate a new deal. He let his plea stand. On a motion by the government under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, the district court departed downward from the fifteen year minimum sentence by three levels for substantial assistance. Williams requested that the district court also use its discretion to adjust his criminal history category downward under U.S.S.G. § 4A1.3. The district court declined and sentenced Williams to 130 months (ten years, ten months) on each of the four counts to run concurrently. Williams now appeals.

## II.  DISCUSSION

Williams argues that the district court erred when it: 1) sentenced him to more than the maximum statutory penalty for the False Information counts, 2) gave him a harsher sentence than the one indicated as the maximum penalty in his plea agreement for all four counts, and 3) declined to adjust his criminal history category downward. We discuss each of these claims in turn.

### A.  FALSE INFORMATION SENTENCE

■ Williams and the government agree that under 18 U.S.C. §§ 922(a)(6) and 924(a)(2) the maximum sentence for providing false information on an application to procure a firearm from a lawfully authorized dealer is ten years. This reading of these statutes is correct, and Williams' status as an armed career criminal does not affect his sentence for this crime. U.S.S.G. § 4B1.4. Because the district court erred in sentencing Williams to ten years and ten months on these counts, we remand this case to the district court to impose a sentence for the False Information counts consistent with the applicable statutes and Guidelines.

### B.  PLEA AGREEMENT

■ Williams contends that the prosecutor in this case breached the promise that she made in Williams' plea agreement and that the district court did not provide the appropriate remedy for this breach. A plea agreement is a contract. *United States v. Ingram,* 979 F.2d 1179, 1184 (7th Cir.1992); *Brooks v. United States,* 708

F.2d 1280, 1281. (7th Cir.1983). Contract interpretation is a mixed question of law and fact which we review *de novo*. *Ingram*, 979 F.2d at 1184. However, disputed terms in a plea agreement are matters of fact that are determined by the district court and will only be set aside if they are clearly erroneous. *See United States v. Daniels*, 902 F.2d 1238, 1243 (7th Cir. 1990); *United States v. Fields*, 766 F.2d 1161, 1168 (7th Cir.1985). The district court's findings are clearly erroneous only where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

### 1. Government Promise

Williams argues that the prosecutor in this case promised him a maximum sentence of ten years in exchange for the cooperation he contracted to provide as part of the Agreement. Williams asserts that he lived up to his end of the bargain by providing helpful information to the government and pleading guilty to the four counts of the indictment, but that the government breached its promise because Williams' sentence was greater than ten years.

■■■ Plea bargaining is "an essential component of the administration of justice" that is to be encouraged. *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In order to ensure the continued use of the plea bargaining process, all parties must have confidence that the agreements are fairly reached and will be enforced against all signatories. *Id.* at 260–61, 92 S.Ct. 495. Therefore, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. 495. However, we read the terms of the government's promise according to their natural meaning and will not require the government to do more than it intended. *See Brooks*, 708 F.2d at 1282 (holding that a government promise to refrain from making a sentencing recommendation does not preclude the government from opposing defendant's efforts to reduce his sentence after the sentence has been handed down). *But see United States v. Bowler*, 585 F.2d 851, 855 (7th Cir.1978) (holding that the government breached a plea agreement where it agreed to consider specific factors when making its sentencing recommendation but failed to show that those factors were in fact considered). Although "the government's promise need not be explicit to be enforceable," more than an "unfounded and unilateral belief" is required to support the defendant's assertion that the government made a particular promise in exchange for his cooperation. *United States v. O'Brien*, 853 F.2d 522, 526 (7th Cir.1988). In general, we do not interpret the government's promise to take certain actions with respect to the defendant's sentencing as a guarantee that a specific sentence will be the result. *See id.* at 525–26 (holding government did not breach plea agreement where it fulfilled its promise to recommend a certain sentence but the sentence imposed exceeded the government's recommendation); *see also United States v. Jimenez*, 992 F.2d 131, 135–36 (7th Cir.1993) (holding that the government did not breach a plea agreement where the government filed a motion for downward departure as required by the agreement but the sentencing judge declined to grant it).

■■■ In this case, the district court found that the government promised to recommend certain decreases in Williams' sentence to the district court. It was then left to the district court to sentence Williams according to the relevant statutes and Sentencing Guidelines and, where applicable, the discretion of the sentencing judge. The district court further found that the paragraph of the Agreement referencing a maximum sentence of ten years

was merely a recitation of a mistake of fact under which both parties were operating at the time the Agreement was signed and not part of the promise agreed to by the government. The government made the agreed recommendation and motion, and the district court took these into account when sentencing Williams. On the record before us, we conclude that the district court's interpretations of the content of the government's promise and of the import of the reference to a ten year maximum sentence are consistent with a natural and fair reading of the terms of the Agreement and the understanding of the parties at the time the Agreement was signed. The district court's factual findings on these matters are not clearly erroneous, and we agree with its conclusion that the government did not breach the promises it made in the Agreement.

## 2. Mistake of Fact

Because the plea agreement was signed under a mutual mistake of fact, the district court concluded that the appropriate remedy was to permit Williams, the party damaged by the mistake, to void the contract. Accordingly, the district court gave Williams the opportunity to withdraw his plea. Williams contends that this remedy was not appropriate. Instead, he argues that the proper remedy was to reform the contract to conform to the intent of the parties when it was signed which was that his sentence be within the range of 57–71 months. Williams asserts that the government should be required to drop the two Felon in Possession counts that form the basis for the minimum fifteen year sen-

tence. This would leave the two False Information counts intact for which the maximum sentence is ten years. He asserts that the understanding under which the parties were operating when the plea bargain was entered into would thus be restored, and the contract would be enforced according to this original intent.

▮ The district court found that the intent of the parties at the time the agreement was signed was not that Williams would receive a specific sentence, but rather, that Williams would cooperate with the government and plead guilty, the government would recommend a decrease of three levels and a downward departure for substantial assistance, and the district court would sentence the defendant according to the applicable statutes and Guidelines. After reviewing the record, we conclude that the district court's interpretation of the parties' understanding upon signing the plea agreement is not clearly erroneous and we accept it as accurate for our analysis.[1]

▮ The legal question then is what is the appropriate remedy for the mutual mistake of fact recited in the Agreement, taking the intent of the parties as the district court has found it. The district court concluded that voiding the contract was appropriate, while Williams argues for reformation. We look to traditional principles of contract law, tempered by concerns of equity and due process arising from the unique context in which this contract arises, to determine the answer to this question. *See Ingram,* 979

---

1. Even had the government's intention been to guarantee Williams a particular sentence the outcome would not be affected. The sentencing of criminal defendants is the province of the judiciary. Congress has made clear that a prosecutor's discretion to decline to charge a defendant in exchange for certain concessions is not to be used to circumvent the appropriate sentence for criminal activity under the Sentencing Guidelines. *See* U.S.S.G. § 6B1 and commentary; Fed. R.Crim.P. 11(e) and commentary. If the government had purported to guarantee Williams

a maximum ten year sentence, and if the district court had determined that under the Guidelines a sentence greater than ten years was appropriate, the district court would have been obligated to reject the plea agreement. *See United States v. Sandles,* 80 F.3d 1145, 1148–49 (7th Cir.1996). In that case, Williams would arguably have been in a worse situation than he was when the district court offered him the option of voiding the Agreement because then he would not have had the option of keeping the benefit of his bargain.

F.2d at 1184; *Fields,* 766 F.2d at 1168. Both voidance and reformation are appropriate remedies where a contract is infected by a mutual mistake of fact. *See* Restatement (Second) of Contracts §§ 152, 155. Reformation is the appropriate remedy when the mistake "is one as to expression—one that relates to the contents or effect of the writing that is intended to express [an] agreement." Restatement (Second) of Contracts § 155 cmt. a. Voidance is the proper remedy "[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances." Restatement (Second) of Contracts § 152(1). In other words, " '[a] mistake as to the existing situation, which leads either one or both of the parties to enter into a contract which they would not have entered into had they been apprised of the actual facts, will not justify reformation. It is not what the parties would have intended if they had known better, but what did they intend at the time, informed as they were.' " *Belvidere Distilling Co. v. Reconstruction Fin. Corp.,* 211 F.2d 893, 896 (7th Cir.1954) (quoting *Russell v. Shell Petroleum Corp.,* 66 F.2d 864, 867 (10th Cir.1933)); *see also Sandles,* 80 F.3d at 1148 ("Where there is a mutual misunderstanding as to the material terms of a [plea agreement], the appropriate remedy is rescission, not unilateral modification."). Here, Williams contends that both parties to the contract were under the mistaken belief that the maximum sentence he could receive for all counts of the indictment was ten years. He maintains that if it had not been for that mistaken assumption, he would not have entered into this Agreement but would have held out for a better deal. It is clear from the basic principles of contract law that the remedy for a contract formed under these circumstances is to void the contract, not to offer Williams the opportunity to reform it unilaterally.

When Williams declined to void the plea agreement, the district court looked to the PSR and applicable Guidelines, rather than to the sentence stipulated in the Agreement, in order to determine the appropriate sentence. While the Sentencing Guidelines allow for parties to make stipulations in plea agreements, "[t]he court is not bound by the stipulation[s], but may with the aid of the presentence report, determine the facts relevant to sentencing." U.S.S.G. § 6B1.4(d). This provision, together with the explanatory commentary regarding it, contemplates that the stipulations of the parties may be inaccurate or incomplete. In that event, the sentencing judge is directed to look to the PSR to determine the facts upon which to sentence the defendant. In this case, the parties made a mistake in their stipulation in the Agreement as to the maximum sentence Williams was eligible to receive. Recognizing the parties' mistake, the sentencing judge took the appropriate action of looking to the PSR to determine the true facts relevant for sentencing.

In sum, the district court correctly concluded that the remedy for the mistake of fact in this case was to permit Williams to void the contract and withdraw his plea. When Williams declined to do so, the district court properly looked to the PSR to determine the relevant sentencing factors and sentenced Williams accordingly. We affirm the district court's judgment in this regard.

## C. CRIMINAL HISTORY ADJUSTMENT

■ Williams next contends that the district court erred in declining to use its discretion to depart downward by adjusting his criminal history category under U.S.S.G. § 4A1.3. Ordinarily, a district court's discretionary decisions concerning upward or downward departures are not reviewable by this Court. *United States v. Poff,* 926 F.2d 588, 590 (7th Cir.1991). However, where a district court's decision not to depart does not result from an exercise of its discretion but rather from an allegedly erroneous conclusion of law,

we review the district court's legal conclusion *de novo. Id.* at 590–91.

Williams argues that the district court denied his motion to depart downward by adjusting his criminal history category under § 4A1.3 because it erroneously concluded that once it had elected to depart downward under § 5K1.1 for substantial assistance, it had no legal authority to depart further under another section of the guidelines. While the district court did express its doubts concerning its ability to depart further once it had departed under § 5K1.1, it is apparent from the record that the district court did not rely on this legal conclusion in making its decision not to depart downward under § 4A1.3. Rather, the district court clearly stated that even if it were able to depart further under § 4A1.3, it would not have done so in this case because it felt that the criminal history category outlined in the PSR and adopted by the court adequately reflected the seriousness of the defendant's criminal history and his likelihood of recidivism. Thus, the district court's decision to deny a downward departure under § 4A1.3 was an exercise of its discretion that is not reviewable by this Court.[2]

### III. CONCLUSION

For the foregoing reasons, the sentence imposed by the district court on the Felon in Possession counts, 18 U.S.C. § 922(g)(1), is AFFIRMED and the sentence imposed on the False Information counts, 18 U.S.C. § 922(a)(6), is VACATED and REMANDED for further consideration consistent with this opinion.

---

**2.** Because the issue of whether a district court can depart under both § 5K1.1 and § 4A1.3 is not before us at this time, we do not address it in this opinion.