**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff–Appellee,

v.

DOUGLAS LEE FROWNFELTER,

    Defendant–Appellant.

No. 09-4211

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:08-CR-00808-TS-1)**

---

Bretta Pirie, (Scott Keith Wilson with her on the briefs) Office of the Federal Public Defender, District of Utah, Salt Lake City, Utah, for the Defendant-Appellant.

David Backman, (Diana Hagen with him on the briefs) Office of the United States Attorney, District of Utah, Salt Lake City, Utah, for the Plaintiff-Appellee.

---

Before **KELLY, LUCERO,** and **HOLMES,** Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

This case is before us on direct appeal of a felony criminal conviction and sentence. It arises from a poorly drafted indictment and a botched plea agreement. Pursuant to that agreement, Douglas Frownfelter pled guilty to a single misdemeanor count of theft of government funds in violation of 18 U.S.C. § 641. Unfortunately, the United States mischaracterized this misdemeanor count as a felony and Frownfelter initially accepted this mischaracterization. Frownfelter recognized the error prior to sentencing and urged the district court to impose a sentence for the misdemeanor to which he pled rather than the spurious felony count. The district court relied upon the government's mischaracterization of the misdemeanor offense, convicted Frownfelter of a felony, and sentenced him to one year and one day in prison.

After Frownfelter paid restitution and began serving his sentence,[1] the United States conceded that Frownfelter had in fact pled guilty to a misdemeanor. Following this admission, the government argues that the plea agreement should be voided in its entirety and the original indictment should be reinstated under the contract principles of mutual mistake and frustration of purpose.

We decline the invitation to rescue the government from its own blunder. Exercising jurisdiction under 28 U.S.C. § 1291, we instead vacate the erroneous felony conviction and remand to the district court with instructions to enter a misdemeanor

---

[1] We reversed the district court's denial of Frownfelter's motion for release pending appeal. United States v. Frownfelter, 363 Fed. App'x 675 (10th Cir. 2010) (unpublished).

conviction and sentence Frownfelter accordingly.

# I

The charges in this case stem from Frownfelter's improper receipt of adoption subsidy payments from the Utah Division of Child and Family Services ("DCFS"). In 1995, Frownfelter and his wife adopted a special needs child. Three years later, the couple divorced, but retained joint custody of the child. Frownfelter was granted adoption subsidy assistance through DCFS, and began receiving monthly payments of $559 in October 2002. In January 2003, the child began living primarily with Frownfelter's ex-wife, but Frownfelter failed to notify DCFS and continued to receive the monthly assistance payments. Between February 2003 and October 2006, Frownfelter received $24,596 in assistance payments to which he was not entitled.

The United States indicted Frownfelter on eleven counts of theft of government funds in violation of 18 U.S.C. § 641. Section 641 provides:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
>
> Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted –
>
> Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

The indictment contains three sections. The first ten paragraphs detail the scheme, including a paragraph stating that Frownfelter received a total of $24,596 in improper assistance payments. The second section, comprising paragraphs eleven and twelve, expressly incorporates the first ten paragraphs and alleges:

> DOUGLAS LEE FROWNFELTER, defendant herein, did willfully and knowingly embezzle, steal, purloin, and convert to his own use money of the United States, and a department and agency thereof (to wit: the U.S. Department of Health and Human Services), with the value of such money, in the aggregate, exceeding $1,000.00, in that defendant FROWNFELTER failed to notify the DCFS during the above period that R.F. no longer lived with him and he no longer provided financial support for R.F., resulting in the following adoption subsidy payments, among others, from the DCFS to defendant FROWNFELTER to which he was not entitled[.]

The final section of the indictment consists of a chart enumerating the eleven separate counts. Each of the eleven counts corresponds to the date of a specific adoption assistance payment and amount of the specific payment, $559 in each instance.

On July 30, 2008, Frownfelter and the United States entered into an agreement titled "Statement by Defendant in Advance of Guilty Plea." One section of that agreement lists "[t]he only terms and conditions pertaining to this plea agreement." In that section, Frownfelter agrees to plead guilty to count eleven of the indictment, to provide truthful financial information, and to pay restitution. The United States agrees to dismiss counts one through ten of the indictment, and not to seek further criminal charges for the conduct described in the indictment.

-4-

Count eleven charged Frownfelter with the receipt of $559 on October 2, 2006. Although § 641 defines the theft of less than $1,000 as a misdemeanor, the introductory sections of the Statement by Defendant in Advance of Guilty Plea characterize Frownfelter's offense as a felony. At a change of plea hearing, the district court similarly asked Frownfelter whether he understood he was pleading to a felony, and Frownfelter responded in the affirmative.

After Frownfelter pled guilty to count eleven, a presentence report ("PSR") was prepared which described the offense as a felony. Frownfelter objected, arguing that § 641 defined the theft of less than $1,000 as a misdemeanor rather than a felony. The government responded that each count of the indictment incorporated the language of the introductory paragraphs, including the allegations that Frownfelter had unlawfully obtained $24,596, well in excess of § 641's felony threshold.[2]

At sentencing, the district court agreed with the government that the indictment alleged a felony under § 641 and concluded that Frownfelter was therefore guilty of a felony. The court sentenced Frownfelter to prison for one year and one day, just over the high end of his advisory Guidelines range, which was six to twelve months. On the government's motion, the district court dismissed the other ten counts of the indictment. However, the government requested that the dismissal of these counts be conditioned "on the plea agreement being enforced in all its particulars," arguing that "if [Frownfelter]

---

[2] The government has conceded that Frownfelter pled guilty only to a misdemeanor, not a felony, thus we do not pursue this issue any further.

successfully appeals his misdemeanor distinction, the United States would reserve the right, under those circumstances, to reinstate those counts because he would void the plea agreement." The district court agreed to the condition.

Frownfelter now appeals, reasserting his contention that he pled guilty to only a misdemeanor.

## II

## A

Because the government has wisely conceded error, we need not linger on the merits of Frownfelter's challenge. The issue of remedy, however, requires some attention. Frownfelter asks us to vacate his felony conviction and remand so that he can be convicted of, and sentenced for, a misdemeanor. Following its concession of error, the government now argues that the proper remedy is to void the plea agreement and reinstate all the counts from the original indictment, which it asserts would be consistent with the district court's order at sentencing.

Frownfelter correctly points out that the government did not squarely raise this alternative remedy argument below. Although the government obliquely suggested at the sentencing hearing that a successful appeal by Frownfelter would somehow "void the plea agreement," it did not specifically advance the frustration of purpose or mutual mistake theories. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721 (10th Cir. 1993) ("[V]ague, arguable references to a point in the district court proceedings do not preserve the issue on appeal." (quotation and alterations omitted)). Frownfelter suggests

-6-

that plain error review would be appropriate. However, neither party cites a case in which plain error review has been applied to an issue advanced by the government under circumstance such as these, nor have we discovered any such cases in our independent research. Moreover, the remedy issue did not come before the district court because of its acceptance of the government's contention that Frownfelter pled to a felony. It is unclear how the plain error standard would apply without a ruling by the district court.

Given the difficulty of the forfeiture issue, and the relative ease with which we can decide the merits of the government's position under any standard of review, we exercise our discretion to proceed directly to the merits. See Spears v. Mullin, 343 F.3d 1215, 1256 (10th Cir. 2003) (court may address merits despite non-jurisdictional procedural issues in the interests of judicial efficiency); see also United States v. Jarvis, 499 F.3d 1196, 1202 (10th Cir. 2007) (issue may be addressed for the first time on appeal if "the proper resolution is beyond any doubt or where injustice might otherwise result" (quotation omitted)).

**B**

Plea agreements are interpreted according to general principles of contract law. United States v. VanDam, 493 F.3d 1194, 1199 (10th Cir. 2007). But our remedial decision-making is guided not merely by contract principles, but by "considerations of fairness and the integrity of the judicial system." Id. at 1204; see United States v. Williams, 198 F.3d 988, 993 (7th Cir. 1999) (in selecting a remedy in the plea agreement context, contract principles are "tempered by concerns of equity and due process arising

from the unique context in which the [plea agreement] arises"); see also United States v. Cook, 406 F.3d 485, 487 (7th Cir. 2005) (a plea agreement is "not just a contract; it is also a stage in a criminal proceeding"); United States v. McGovern, 822 F2d 739, 743 (8th Cir. 1987) ("A plea agreement, however, is not simply a contract between two parties. It necessarily implicates the integrity of the criminal justice system."). It is against this backdrop that we address the United States' contract-based argument.

**1**

Under the contract doctrine of frustration of purpose, charges dismissed pursuant to a plea agreement may be reinstated if a "reasonably unforeseeable event intervenes" such that a contracting party is deprived of the benefit that induced the agreement. United States v. Bunner, 134 F.3d 1000, 1004 (10th Cir. 1998). The aggrieved party may be relieved of its obligations under the plea agreement if it satisfies a three-part test:

> First, the frustrated purpose must have been "so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." Second, the frustration must be such that the intervening event cannot fairly be regarded as within the risks the frustrated party assumed under the contract. Finally, "the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made."

Id. (quoting Restatement 2d Contracts § 265 cmt. a).

The government's argument for frustration of purpose fails the Bunner test. As a threshold matter, the intervening event the government points to is Frownfelter's citation

-8-

to the plain language of the then four-year-old statute under which he was charged.[3]  In

contrast to the subsequent Supreme Court decision at issue in Bunner, the plain language

of an extant statute is not a "reasonably unforeseeable event."

Even if we were to ignore the foreseeability of the government's proffered

intervening event, the government has failed to satisfy at least two prongs of the Bunner

test.  First, the record does not support the United States' contention that the

felony/misdemeanor distinction was "so completely the basis of the contract that, as both

parties understand, without it the transaction would make little sense." Bunner, 134 F.3d

at 1004 (quotation omitted).  If the United States considered the felony/misdemeanor

distinction so material, it is unclear why it did not exercise greater care in drafting the

indictment and plea agreement.  Nor does the government advance any reasoned

argument explaining the asserted centrality of obtaining a felony conviction.  By pleading

guilty to count eleven—without regard to whether the count was a felony or a

misdemeanor— Frownfelter was exposed to an advisory Guidelines sentencing range of

six to twelve months' imprisonment, was required to pay substantial restitution, and

saved the government the time and expense of proceeding to trial.  Any additional

collateral consequences of a felony conviction, which the government fails to identify in

---

[3] 18 U.S.C. § 641 provides that "if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both." (emphasis added).

its brief, appear tangential to these core benefits obtained by the government. By no means can we declare that the plea agreement makes "little sense," id., when properly construed as requiring Frownfelter to plead guilty to a misdemeanor.

We further hold that the United States' argument fails under the second element of the <u>Bunner</u> test. The intervening event advanced by the government—that Frownfelter would rely on the plain text of the statute of conviction—is a risk assumed by the government. Ambiguities in plea agreements are construed against the government. <u>VanDam</u>, 493 F.3d at 1199. Absent some unambiguous clause restraining Frownfelter from advancing the claim he now asserts, or at least a very good reason to conclude Frownfelter agreed not to raise the issue, it was the government that bore the risk he would do so.

## 2

The government also argues that the plea agreement is voidable on the basis of mutual mistake. We recognized the applicability of this doctrine to plea agreements in <u>United States v. Lewis</u>, 138 F.3d 840 (10th Cir. 1998). For an agreement to be rescinded under the doctrine of mutual mistake, the party seeking rescission must satisfy a three part test similar to that for frustration of purpose:

> First, the mistake must relate to a basic assumption on which the contract was made. Second, the party seeking avoidance must show that the mistake has a material effect on the agreed exchange of performances. Third, the mistake must not be one as to which the party seeking relief bears the risk.

Restatement 2d Contracts § 152 cmt. a (internal quotation marks omitted).

-10-

The United States fails to satisfy all three elements of this test. First, and as described in Section II.B.1, supra, there was no mistake regarding the basic assumption on which the plea agreement was made. See Restatement 2d Contracts § 152 cmt. b ("The term 'basic assumption' has the same meaning here as it does . . . in connection with impracticability and frustration." (citations omitted)). The basis of the agreement was that Frownfelter would plead guilty to count eleven and the government would move to dismiss the remaining counts. It is true that both Frownfelter and the United States originally believed that count eleven was a felony. But nothing in the language of the plea agreement indicates that the distinction between misdemeanor and felony was a basic assumption of the plea agreement; to the contrary, the section that includes "[t]he only terms and conditions pertaining to this plea agreement" is entirely silent on the issue. The government has not provided any basis to conclude that the felony/misdemeanor distinction was particularly meaningful.

Second, the government does not show the mistake had a material effect on the agreed exchange.

> A party cannot avoid a contract merely because both parties were mistaken as to a basic assumption on which it was made. He must, in addition, show that the mistake has a material effect on the agreed exchange of performances. It is not enough for him to prove that he would not have made the contract had it not been for the mistake. He must show that the resulting imbalance in the agreed exchange is so severe that he can not fairly be required to carry it out.

Restatement 2d Contracts § 152 cmt. c. The United States falls short of meeting this element for the same reason it loses on the first: the government wholly fails to explain

-11-

how the felony/misdemeanor distinction is a crucial component of the bargain, much less how the distinction renders the "resulting imbalance in the agreed exchange is so severe that [the government] can not fairly be required to carry it out." Id.

Finally, the United States has not met the third element of the test. In contrast to Lewis, our sole case addressing mutual mistake in this context, the mistake at issue here did not concern a subsequent Supreme Court decision. The mistake in this case—that the language of the statute meant what it said—is a risk the United States assumed when it drafted both the original indictment and the plea agreement. Under contract principles, the United States assumes the risk that an ambiguous plea agreement will be construed against it. VanDam, 493 F.3d at 1199.

The United States relies upon three decisions by the Seventh Circuit in support of its arguments for rescission, Williams, 198 F.3d at 988, Cook, 406 F.3d at 485, and United States v. Bradley, 381 F.3d 641 (7th Cir. 2004). This reliance is misplaced.

Williams does not directly address whether there was a mutual mistake. Although it notes that the district court's conclusion as to the parties' intent was not clearly erroneous, 198 F.3d at 993, the question presented was "the appropriate remedy for the mutual mistake of fact." Id. We need not reach that issue because the government has not shown that the mutual mistake doctrine applies.

In Bradley, the defendant successfully argued that his plea was not knowingly and voluntarily entered as to one count included in a plea agreement. 381 F.3d at 647. After holding that the defendant was entitled to withdraw his plea on that count, the court

-12-

concluded that the entire plea agreement was inherently tainted because the existence of a voluntary plea was an "essential term." Id. at 648. Both parties agreed that the entire agreement should be voided if the plea was deemed involuntary. Id. Unlike Bradley, we are not presented with the elimination of an essential term or agreement of the parties.

Finally, Cook is not analogous because Frownfelter is not seeking to rewrite his plea agreement in order to receive a one-sided benefit. In Cook, the defendant claimed that he was mistakenly granted a two-level sentencing reduction under the plain terms of the plea agreement, rather than a three-level reduction which the law authorized. 406 F.3d at 488. The court noted that defendant "has presented no evidence that there was a mistake," but denied relief on the ground that rescission rather than reformation was the only potential remedy in any event. Id. "[I]f the mistake was mutual, why should [defendant] benefit from it and the government bear the entire cost of the mistake? When a contract is rescinded, the parties are put back where they were before there was a contract." Id.

Frownfelter, unlike the defendant in Cook, is not seeking to rewrite the plea agreement. Rather, Frownfelter correctly contends that the plea agreement required him to plead guilty to a misdemeanor, that he did so, and that the district court improperly convicted him of a felony and sentenced him accordingly. He does not ask us to grant him additional benefits above and beyond those granted to him in the plea agreement. Further, as the Cook court stated, "[w]hen a contract is rescinded, the parties are put back where they were before there was a contract." Id. But Frownfelter has already served

-13-

time in prison and paid restitution; we cannot undo those acts.

Frownfelter satisfied his obligations under the plea agreement, and the government has not provided a basis to void that agreement. The government must uphold its end of the bargain.

## III

Because Frownfelter's plea to a misdemeanor count cannot support a felony conviction, we **VACATE** the felony conviction and **REMAND** for entry of a misdemeanor conviction and a misdemeanor sentence.