**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 22, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WILLIAM ANGEL HERNANDEZ,

    Defendant-Appellant.

No. 07-2267

(D.C. No. CR-05-1486-BB)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, LUCERO,** and **TYMKOVICH**, Circuit Judges.

Defendant William Hernandez pled guilty to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and was sentenced to a term of imprisonment of eighty-four months. Hernandez now appeals, challenging two Sentencing Guideline enhancements imposed by the district court, as well as the substantive reasonableness of his sentence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

*Factual background*

On June 4, 2004, officers from the Farmington, New Mexico, Police Department received a call indicating that an individual was selling drugs at a particular location. Upon arrival at the scene, officers observed a vehicle previously described by the caller parked in front of a motel. Officers approached the driver of the vehicle and, after repeated inquiries, determined his name was William Hernandez (the defendant). The officers arrested Hernandez after learning that he had outstanding warrants. A subsequent search of the vehicle, for which the officers located no registration record in Hernandez's name, revealed a black nylon bag in plain view on the right front passenger seat. The bag contained a nine millimeter semi-automatic pistol, with nine rounds of ammunition in the magazine. Also inside the black nylon bag were two plastic baggies containing 34.1 grams of marijuana and 2.0 grams of psilocybin (mushrooms), two small scales, empty plastic baggies commonly used for weighing and packaging controlled substances, and a pill bottle containing 52 diflunisal tablets.

On July 1, 2004, Hernandez was involved in a traffic stop initiated by Farmington police officers based on their observation that Hernandez was driving with an expired license plate. Hernandez initially failed to pull his vehicle over, but ultimately stopped. When Hernandez got out of his vehicle, he ignored the officers' commands to back away from the vehicle and to raise his hands. Accordingly, the officers pushed Hernandez to the ground and handcuffed him. A search of Hernandez's clothing revealed a plastic

2

baggie containing .5 grams of methamphetamine in his pocket. During a search of Hernandez's vehicle, the officers found in the middle of the back seat a black bag containing a Bryco .380 caliber semi-automatic pistol. The pistol was loaded with six rounds of ammunition in the magazine and one round in the chamber.

On September 13, 2004, New Mexico State Police officers were dispatched in response to a report of a one-vehicle crash in a ditch on a county road in Bloomfield, New Mexico. While en route to the scene, the officers were informed by dispatch that the vehicle reportedly involved in the crash had been pulled from the ditch by another vehicle. The officers subsequently came into contact with the vehicle reportedly involved in the crash and initiated a traffic stop on it because it appeared the occupants were not wearing their seat belts. The driver of the vehicle was identified as defendant Hernandez. The passenger, identified as Frank Martinez, was found to be the owner of the vehicle. The officers arrested Hernandez after determining he had two outstanding warrants. A search incident to arrest revealed that Hernandez was carrying two knives and a box of .22 caliber ammunition in his pocket. Martinez admitted to the officers that he had used methamphetamine prior to the traffic stop. Accordingly, the officers decided to tow the vehicle. An inventory search of the vehicle revealed, in plain view on the rear floorboard behind the driver's seat, a loaded .22 caliber revolver and five baggies containing, respectively, 28.7 grams of marijuana, 28.8 grams of marijuana, 2.8 grams of methamphetamine, 1.5 grams of methamphetamine, and 6.6 grams of methamphetamine. Spoons with suspected methamphetamine residue were found on the center console. In

3

the trunk of the vehicle, officers found an unloaded 12 gauge shotgun, a leather holster for a .22 handgun, six shotgun shells, and nine .22 caliber cartridges.

*Procedural background*

On July 12, 2005, a federal grand jury returned a three-count indictment against Hernandez charging him with being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), on each of the three dates outlined above. More specifically, Count 1 pertained to the June 4, 2004 incident, Count 2 pertained to the July 1, 2004 incident, and Count 3 pertained to the September 13, 2004 incident.

On October 12, 2006, the government filed a motion for writ of habeas corpus ad prosequendum. The motion indicated that Hernandez was confined in the San Juan County Detention Center, Aztec, New Mexico, and asked the district court to direct that San Juan County authorities surrender Hernandez to the custody of the United States Marshal "until the federal prosecution [wa]s complete." ROA, Vol. 1, Doc. 3 at 1. The district court granted the United States' motion on October 17, 2006.

On December 4, 2006, Hernandez pled guilty, pursuant to a written plea agreement, to Count 2 of the indictment. The probation office subsequently prepared and disclosed to the parties its presentence investigation report (PSR). The PSR imposed a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4).[1] The PSR then imposed a

_____

[1] Section 2K2.1(a)(4)(A) provides for the imposition of a base offense level of 20 for an offense involving possession of firearms or ammunition if "the defendant
(continued...)

4

two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(A) because the offense involved three or more firearms. In imposing this enhancement, the PSR noted that "[w]hile the offense of conviction consists of one firearm, relevant conduct authorizes the consideration of all acts and omissions committed by the defendant," and, "[a]s such, his possession of different firearms as charged in the . . . Indictment ha[s] been included." Id., Vol. 2, PSR at 9. The PSR also imposed a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) because Hernandez "possessed a firearm and ammunition in connection with another felony offense . . . ." Id. at 10. In support of this enhancement, the PSR noted that each of the three incidents giving rise to the three counts in the indictment resulted in drug-related charges being filed against Hernandez in New Mexico state court, and concluded that Hernandez's possession of firearms and ammunition during each incident were "in connection with" the possession and/or "distribution of illegal substances." Id. After imposing a three-level reduction pursuant to U.S.S.G. § 3E1.1 for Hernandez's acceptance of responsibility, the PSR arrived at a total offense level of 23. Combining this total offense level with Hernandez's criminal history score of 10 and his criminal history category of V, the PSR calculated a guideline range of 84 to 105 months.

Hernandez filed written objections to the PSR. In particular, Hernandez objected

---

[1](...continued)
committed any part of the . . . offense subsequent to sustaining one felony conviction of either a crime of violence of a controlled substance offense . . . ." U.S.S.G. § 2K2.1(a)(4)(A).

to the two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(A), arguing that "[t]he offense to which [he] pled guilty involved [only] one (1) firearm," and that "[i]t [wa]s not sufficient to show that he had been charged with other offenses involving firearms." Id., Vol. 1, Doc. 23 at 2. Hernandez also objected to the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6), arguing that, at the time he entered his plea to Count 2 of the indictment, "[h]e made no other admission indicating that he possessed the firearm in connection with another felony." Id. at 3. Hernandez further argued that "the small quantity of methamphetamine found in this case [in connection with Count 2] was not for sale but for personal use . . . ." Id. at 4. In addition, Hernandez argued that he "did not make any factual statements at the time of his plea regarding the other felonies that might have been connection to Count I and Count III" and, "[a]s a result, the relevant conduct relied upon by Probation [wa]s not adequate to support a four (4) level upward adjustment." Id.

Hernandez also filed a sentencing memorandum asking the district court to impose a below-Guidelines sentence of 36 months. In support of his request, Hernandez pointed to the following factors: (1) his "horrible childhood where he suffered extraordinary physical abuse" at the hands of his stepmother; (2) "[n]eurological injuries caused by brain trauma [he] sustained" during his childhood and as an adult; (3) "[l]ack of parental guidance while growing up"; (4) "[m]ental health issues that c[ould] be traced to his abusive childhood and injuries he suffered while growing up"; and (5) the fact that the PSR utilized relevant conduct "that substantially increase[d] the sentence he" was facing

6

in federal court.  Id., Doc. 28 at 6.  In addition, Hernandez noted that he was facing "a lengthy sentence . . . in the State District Court in Farmington for offenses that all relate[d] to the firearm charges in his federal case."  Id. at 5.

The government filed a response in opposition to Hernandez's request for a below-Guidelines sentence.  The government asserted that Hernandez was "a highly dangerous individual and . . . someone that the public need[ed] to be protected from."  Doc. 29 at 1.  In support of this assertion, the government noted that Hernandez's "prior crime of violence [wa]s for robbery and involved [Hernandez] placing a knife to a victim's neck, demanding money, and a threat of death."  Id.  In addition, the government noted that Hernandez was facing a charge of felonious assault in New Mexico state court, arising out of an incident in which Hernandez was "shot several times after pointing a firearm out his car window towards officers."  Id. at 2.  Lastly, the government argued that "[t]he other offenses and arrests reflected in the PSR" established that Hernandez was "a violent, dangerous individual that [wa]s an ever-present threat to society when not incarcerated."  Id.

The district court conducted a sentencing hearing on October 17, 2007.  To address Hernandez's objections to the two sentencing enhancements, the government presented two witnesses.  The first witness, Steven Smith, a former officer with the Farmington Police Department, was involved in the June 4, 2004, incident that gave rise to Count 1 of the indictment.  The second witness, Jacob Garcia, is a New Mexico State police officer who was involved in the September 13, 2004 incident that gave rise to Count 3 of the

7

indictment.  At the conclusion of their testimony, the district court overruled Hernandez's objections to the two enhancements.  In doing so, the district court found that "the facts testified to" by Smith and Garcia "indicate[d] the defendant had access to firearms on at least two occasions."  Id., Vol. 4 at 45.  The district court further found, based on the evidence presented, that Hernandez was "likely dealing drugs" at the time of the two incidents.  Id.  "The fact that . . . Hernandez ha[d] the good sense to use someone else's car in both these instances," the district court stated, was not "particularly probative of the fact that he was not dealing."  Id. at 46.  The district court then rejected Hernandez's request for a below-Guidelines sentence and imposed a sentence of 84 months.

II.

*U.S.S.G. § 2K2.1(b)(1)(A) enhancement*

Hernandez contends the district court erred in finding that he possessed three or more firearms and, based on that finding, imposing a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(A).  In determining whether the district court properly applied the challenged enhancement, we review the district court's legal conclusions de novo and its factual findings for clear error.  United States v. Fonseca, 473 F.3d 1109, 1112 (10th Cir. 2007).  In reviewing the district court's factual findings, we "view the evidence and inferences therefrom in the light most favorable to the district court's determination."  United States v. Mozee, 405 F.3d 1082, 1088 (10th Cir. 2005).

Section 2K2.1 of the Sentencing Guidelines establishes the base offense level, as well as certain enhancements, for offenses involving the unlawful receipt, possession, or

8

transportation of firearms or ammunition. At issue here is subsection (b)(1)(A), which requires a two-level enhancement to the base offense level if the offense at issue involved "3-7" firearms. U.S.S.G. § 2K2.1(b)(1)(A).

As with any guideline provision, a district court, in deciding whether this enhancement is applicable, must consider "relevant conduct," as outlined in U.S.S.G. § 1B1.3. Section 1B1.3 provides, among other things, that "all acts . . . committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" shall be taken into account. U.S.S.G. § 1B1.3(a)(1)(A). The commentary to § 1B1.3 states that offenses may be considered part of a "common scheme or plan" if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." Id. cmt (n.9(A)). That same commentary further provides that offenses will

> qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determinations of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required.

Id. cmt. (n.9(B)). In determining relevant conduct, the district court may consider the dismissed counts of an indictment. United States v. Gay, 240 F.3d 1222, 1229 n.6 (10th

9

Cir. 2001).

Hernandez's challenge to the § 2K2.1(b)(1)(A) enhancement in this case is narrowly focused on the district court's findings that he possessed all of the firearms involved in the three incidents giving rise to the three counts of the indictment. Although Hernandez concedes he "pleaded guilty to possessing one firearm" in connection with Count 2, he argues "the government failed to prove he possessed the three additional firearms specified in the two dismissed counts." Aplt. Br. at 19. With respect to the firearm involved in Count 1 (pertaining to the June 4, 2004 incident), Hernandez asserts "[t]here was no evidence that he had actual possession of the gun, and there was no evidence that he knew or should have known a gun was in the bag [found on the front passenger seat]." Id. As for the two firearms involved in Count 2 (arising out of the September 13, 2004 incident), Hernandez argues they "were in a car occupied by [himself] and Frank Martinez, the owner of the car." Id. According to Hernandez, he "did not have actual possession of the guns, both of which were out of his reach and out of sight, one behind the [driver's] seat and the other in the trunk of the car." Id.

Turning first to the firearm involved in Count 1, we conclude the district court did not clearly err in finding that Hernandez knowingly possessed that firearm. As outlined above, on June 4, 2004, Farmington police officers were dispatched to a hotel parking lot in response to a call that someone was selling drugs out of a vehicle. When they arrived at the hotel, the police observed a vehicle matching the description offered by the caller. The police approached the driver and sole occupant of the vehicle and, after initially

10

being lied to, determined him to be defendant Hernandez. The police determined there were outstanding warrants for Hernandez and, accordingly, placed him under arrest. During their ensuing inventory search of the vehicle, the police discovered a black nylon bag in plain view on the front passenger seat. As noted, that bag contained a loaded semi-automatic pistol, marijuana, mushrooms, a vial of prescription drugs, some small plastic baggies, and a small scale. According to the testimony of one of the officers, Steven Smith, the amount of marijuana found in the bag was consistent with distribution, and the scales were of a variety sometimes used by traffickers of illegal narcotics. Smith further testified that drug traffickers often carry firearms "either for their protection or maybe to protect their property." ROA, Vol. 4 at 17. Together, this evidence was more than sufficient to have allowed the district court to find, by a preponderance of the evidence, that Hernandez knowingly possessed the firearm and was engaged in the sale of illegal drugs. Although it is true that Hernandez informed the officers the vehicle did not belong to him, and police dispatchers were unable to identify the owner of the vehicle, these facts alone are not sufficient to undermine the district court's factual findings. Indeed, the district court was well-justified in finding that Hernandez simply had the "good sense to use someone else's car" to carry out his drug-trafficking activities. Id. at 46.

We next turn to the evidence pertaining to the two firearms involved in Count 3 of the indictment. On September 13, 2004, New Mexico State Police officers were dispatched to the scene of a one-vehicle crash in a ditch and, after learning that the vehicle had been pulled out of the ditch and had left the scene, ultimately stopped the

11

vehicle after observing that the driver and passenger were not wearing their seatbelts. The officers determined that the driver of the vehicle, Hernandez, had two outstanding warrants for his arrest. Accordingly, the officers conducted a pat-down search of Hernandez and placed him under arrest. During the pat-down search, the officers found .22 caliber ammunition in Hernandez's front pocket. The passenger, Frank Martinez, was determined to be the owner of the vehicle. Although Martinez had a valid identification card and no outstanding warrants, he was extremely nervous and jittery, wouldn't look at the officers, and ultimately admitted that he had ingested methamphetamine. Given Martinez's situation, the officers decided to tow the vehicle. Before doing so, they conducted an inventory search of the vehicle. The officers found, in plain view on the floorboard behind the driver's seat, three small baggies of methamphetamine and a large plastic baggie containing two smaller baggies of marijuana. In the same vicinity as the narcotics, the officers also found a loaded .22 revolver. Notably, the cartridges found by the officers in Hernandez's pocket fit the .22 revolver. In the trunk of the vehicle, the officers found an unloaded, sawed-off shotgun.

Viewing this evidence in the light most favorable to the district court's factual findings, we conclude the district court did not clearly err in finding that Hernandez possessed the .22 revolver found in the vehicle. Although the vehicle itself did not belong to Hernandez, and indeed the vehicle's owner was a passenger in the vehicle, the fact that Hernandez personally possessed ammunition that fit the revolver, and the fact that the revolver was found in plain view near Hernandez's position in the driver's seat,

12

was clearly sufficient to tie Hernandez to the revolver. Further, although Hernandez argues that the revolver was not reachable from his position in the driver's seat, the district court could have reasonably inferred that Hernandez dropped the revolver on the rear floorboard immediately prior to being stopped by the police. Alternatively, the district court could have reasonably inferred that Hernandez placed the firearm there at some point prior to encountering the police. Either way, the evidence presented by the government was more than sufficient to have allowed the district court to find that Hernandez knowingly possessed the revolver.

It is admittedly a closer question whether the evidence was sufficient to allow the district court to reasonably find that Hernandez knowingly possessed the unloaded sawed-off shotgun found in the trunk of the vehicle. Given the fact, however, that the district court did not clearly err in finding that Hernandez possessed the three other firearms at issue (i.e., the firearm from the June 4, 2004 incident, the firearm from the July 1, 2004 incident, and the loaded revolver from the September 13, 2004 incident), we conclude it is unnecessary for us to resolve this issue. That is, even if we were to conclude that the district court clearly erred in finding that Hernandez possessed the shotgun, the district court's application of the § 2K2.1(b)(1) enhancement would remain valid because the minimum number of firearms necessary for application of that Guideline would be satisfied.

*U.S.S.G. § 2K2.1(b)(6) enhancement*

In his second issue on appeal, Hernandez contends the district court erred in

13

imposing a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6).[2] That guideline

provides, in pertinent part, as follows:

> If the defendant used or possessed any firearm or ammunition in connection
> with another felony offense; or possessed or transferred any firearm or
> ammunition with knowledge, intent, or reason to believe that it would be
> used or possessed in connection with another felony offense, increase [the
> base offense level] by 4 levels.

U.S.S.G. § 2K2.1(b)(6). "[W]e have generally held that if the weapon [at issue]

facilitated or had the potential to facilitate the underlying felony, then [the] enhancement .

. . is appropriate." United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998).

Hernandez begins his attack on the district court's application of § 2K2.1(b)(6) by

arguing that, "[f]or the same reason the government failed to prove [he] possessed the

guns in Counts 1 and 3, it failed to prove he possessed the drugs associated with those

counts." More specifically, he argues that "[t]he drugs were in the same bag as the gun in

the June incident, and the drugs were out of sight and reach along with the gun, behind

the seat, in the September incident." Aplt. Br. at 27.

Hernandez's arguments in this regard lack merit for the reasons already discussed

above in our analysis of his challenge to the § 2K2.1(b)(1) enhancement. During the

incidents giving rise to Counts 1 and 3, the drugs seized by the police were found in close

proximity to not only Hernandez himself, but to the loaded firearms as well. More

---

[2] In his opening appellate brief, Hernandez erroneously refers to U.S.S.G. §
2K2.1(b)(5), rather than U.S.S.G. § 2K2.1(b)(6). This error is likely based on the fact
that, prior to November 1, 2006, what is now § 2K2.1(b)(6) was designated as §
2K2.1(b)(5).

specifically, the drugs seized during the June 4, 2004 incident were found on the front passenger seat of Hernandez's vehicle, inside the same black nylon bag as the loaded semi-automatic pistol that Hernandez was charged in Count 1 with illegally possessing. Similarly, the drugs seized during the September 13, 2004 incident were discovered by the police on the rear driver's side floorboard of the vehicle Hernandez was driving, in close proximity to the loaded .22 revolver that formed the basis of Count 3. Thus, the district court did not clearly err in finding that Hernandez possessed the drugs seized during each of these incidents.

Hernandez also attacks the district court's application of the § 2K2.1(b)(6) enhancement on the grounds that the amounts involved in each of the three incidents were "small, user amounts, not trafficking amounts, and not amounts worth significant amounts of money." Aplt. Br. at 28. Hernandez's argument in this regard lacks merit. Although the government did not present any evidence at the time of sentencing regarding the incident giving rise to the count of conviction (Count 2), it did present testimony from officers involved in the two incidents giving rise to Counts 1 and 3 of the indictment. Both of those officers testified that the quantities of drugs seized during those two incidents were consistent with drug trafficking. ROA, Vol. 4 at 16 (testimony of Farmington police officer Steven Smith that the 34 grams of marijuana seized from Hernandez's vehicle would be consistent with distribution); id. at 28, 35 (testimony of New Mexico State police officer Jacob Garcia that the quantities, as well as the packaging, of the drugs seized from Hernandez's vehicle would be consistent with

15

distribution).  In light of this testimony, we conclude the district court did not clearly err in finding that Hernandez was "likely dealing drugs" at the time of those two incidents. ROA, Vol. 4 at 45.

Relatedly, we conclude the district court did not clearly err in finding that, during each incident, Hernandez possessed the loaded firearms "in connection with" his drug-trafficking activities.  In each instance, the loaded weapons were in extremely close proximity to the seized narcotics.  See Bunner, 134 F.3d at 1006 (concluding that "a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under [then] § 2K2.1(b)(5) [which has now become § 2K2.1(b)(6)].").  In addition, the government presented testimony that firearms are commonly used by drug traffickers as protection for themselves and their merchandise. ROA, Vol. 4 at 17 (testimony of Farmington police officer Steven Smith).  Thus, the district court was well-justified in determining that the firearms at issue had the potential to facilitate Hernandez's drug-trafficking activities.

*District court's authority to impose below-Guidelines sentence*

In his third issue on appeal, Hernandez contends, in somewhat confusing fashion, that the district court "erroneously determined that it lacked authority, apparently by statute, to set a below-guidelines sentence to account for the consecutive state sentences [he] faced for state charges that addressed the same behavior that resulted in the enhancement of his federal sentence."  Aplt. Br. at 34-35.  In support of this contention, Hernandez notes that, at the time of his sentencing in this case, he had six pending

16

criminal cases in New Mexico state court. Id. at 36. Three of those six cases, Hernandez asserts, "encompassed precisely the same charges leveled against [him] in federal court as both indicted offenses and as guideline enhancing relevant conduct: possession of guns and drugs in June, July, and September, 2004." Id. at 36-37. Hernandez notes that his federal base offense level was "enhanced by two levels for possessing the very guns for which he w[ould] be punished in state court," and "by four levels for the very same drugs for which he w[ould] be punished in state court," "result[ing] in a sentence over three years longer than it otherwise would have been." Id. at 37. Hernandez further argues that "[t]he government did not controvert [his] proffer that he faced lengthy consecutive sentences of ten to twelve years for the pending state charges," and "[t]he district court accepted [his] position that the Bureau of Prisons would not treat any federal sentence as running concurrently with a state sentence." Id. In conclusion, Hernandez argues that the district court "should have known that there were no constraints keeping it from sentencing [him] below the guideline level in consideration of the additional consecutive time he faced in state court, for criminal behavior which largely overlapped that for which he was being punished in federal court." Id. at 37-38.

"[A]ppellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" Gall v. United States, 128 S.Ct. 586, 594 (2007). In determining whether a sentence is reasonable, an appellate court applies "the familiar abuse-of-discretion standard of review . . . ." Id. "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions."

17

Koon v. United States, 518 U.S. 81, 100 (1996).

Here, Hernandez appears to be asserting that the district court's exercise of its sentencing discretion was guided by an erroneous legal conclusion, i.e., that it was impermissible to impose a below-Guidelines sentence on the basis that Hernandez was potentially facing "additional consecutive time" in the New Mexico state court for essentially the same criminal behavior that gave rise to his federal sentence. For the reasons outlined below, however, we conclude the district court did not commit any such legal error in imposing Hernandez's sentence.

At the time Hernandez was indicted in this case, he was in New Mexico state custody facing approximately forty criminal charges (including approximately thirty-six charges arising out of the incidents underlying the three counts of the federal indictment). ROA, Vol. 2, PSR at 21-26 (detailing pending state criminal charges). According to the PSR, "the attorneys representing the State and Federal cases . . . agreed to allow . . . Hernandez to refrain from entering a formal plea of guilty in the State case[s] until the Federal case ha[d] been sentenced." Id. at 26. Accordingly, the United States sought and was granted by the district court a writ of habeas corpus ad prosequendum for Hernandez. Thereafter, Hernandez entered into a written plea agreement with the United States.

Prior to sentencing, Hernandez filed a memorandum asking the district court to impose a below-Guidelines sentence because, in pertinent part, Hernandez was facing "a lengthy sentence . . . in the State District Court in Farmington for offenses that all relate[d] to the firearm charges in his federal case." Id., Vol. 1, Doc. 28 at 5. At the

18

sentencing hearing, Hernandez's counsel, government counsel, and the district court

engaged in the following colloquy regarding Hernandez's request:

> MR. PADILLA [Defense counsel]: * * * What I've asked the Court to do in my sentencing memorandum is to impose a sentence of three years, 36 months, which again will not start until after [Hernandez] finishes his state time. And to consider the fact that he is going to be taken into state custody. So that when he – at some point in the future, even if the sentence is three years, will likely serve a sentence that's going to be close to 10 years, and probably definitely more than the seven years that this Court could impose, if you impose a sentence at the low end of the applicable guidelines.

> THE COURT: Do you have some reason to think the state judge won't run this sentence concurrent – or hers?

> MR. PADILLA: I don't. I can't say one way or the other. But I can say this, Your Honor, even if the district court judge in Farmington – and I'm sure Probation can verify this – that if the district court judge runs – let's say a sentence of 10 years, or even, let's say six years, concurrent with the federal sentence, the Bureau of Prisons isn't really going to give a damn. What they are going to do is simply require – even if the state judge runs it concurrent, they are going to require that he serve his state time. Irregardless of that state court judge's intention, they are going to want to let him finish his state time. And they won't even pick him up until after he finishes his state time. They'll lodge a detainer against him, and they will go ahead and let him serve his state sentence, and then pick him up and take him into federal custody.

> I've seen this happen many times before. * * * But I think it's clear, that even if the state judge runs the time concurrent, because he is primarily in state custody, the Bureau of Prisons will require that he remain in state custody until he finishes that time, again, irregardless of that judge's intention, and will not pick him up to serve his federal sentence until after he's released or discharged from the state.

> I mean, that's my concern. And, again, I would like some input from Probation. But that's my understanding, that he will not be taken into – or that a concurrent sentence ordered by a state judge will not have any effect on what sentence he faces in federal court.

THE COURT: So it's really a question of timing. If it came the other way around, I would run it concurrent potentially, and he would serve his time in federal prison and not be required to serve additional time in state prison?

MR. PADILLA: It may all come out in the wash, and it may all come out the same. But I know that because of his position; that is being in federal custody on a writ, he's considered to be primarily in the custody of the state. And as far as the Bureau of Prisons is concerned, they don't want to have anything to do with him until he finishes his state time.

THE COURT: How is it they held him for a year in federal custody?

MR. PADILLA: He was brought here on a writ. He was in state custody awaiting the charges that are charged in the Four Corners area. He was brought here on a writ to deal with these federal charges. Once he's finished with his business here, he's simply going to be given back to the state.
Now, if it was the other way around, he was primarily in federal custody, and he wanted – and you gave him a sentence, and then he went into state custody, at that point, the state court judge could run it concurrent, and, I think, release him back to the feds. But, otherwise, there is a major problem with that, Your Honor. I mean, whether it's your intention or the district court judge's intention to run it concurrent, the way that's worded, the way that is done and the timing of that is extremely important.

THE COURT: Mr. Walsh [government counsel ], do you wish to be heard?

MR. WALSH: Yes, Your Honor, real briefly. One thing I'd like to throw into the mix was that the defendant did receive the benefit, in terms of his criminal history [score under the Sentencing Guidelines], as far as being writted out here and having his federal case taken before he eventually – assuming a conviction – that he finished up his case in state court.

I think that, you know, all things considered –

THE COURT: That would have bumped him into criminal history category 6?

MR. WALSH: I believe so, especially since it probably would have been

20

at least three points that would have been added to the ten [points of criminal history score].

> I think we are pretty generous to offer a low-end recommendation in this case, given the defendant's criminal history.

Id., Vol. 4 at 52-56.

At the conclusion of the hearing, the district court rejected Hernandez's request for a below-Guidelines sentence, stating, in pertinent part, as follows:

> All right. You do have a very challenged background, Mr. Hernandez. The Court has a good deal of sympathy for the situation you were put in early in life. You were not dealt a fair hand; there is no question about that.
>
> On the other hand, since that time, you have managed to be in trouble with the law on repeated occasions and for serious and violent acts. I can't ignore that. I have trouble with – the Bureau of Prisons may take it upon themselves to bring up any concurrent sentences. Again, however, the system, the judiciary is fairly constricted on what we can do. And I think that's by the intent of congress.
>
> Hopefully, the state judge who does not have such constraints can take account of your federal sentence and adjust theirs accordingly to what they think the state actions require.
>
> I don't think a downward departure or a variance is appropriate given the facts in this case. I've looked at 18 United States Code, 3553, and I have to say the seriousness of the offense and the protection of the public strongly inclined me to require that you serve at least the minimum guideline sentence.

Id. at 61-62.

Contrary to Hernandez's assertions, the above-quoted statements make clear that the district court knew it had authority to impose a sentence below the advisory guideline sentencing range, but that it simply chose not to do so after considering the various factors outlined in 18 U.S.C. § 3553(a). See generally United States v. Clark, 385 F.3d

21

609, 623 (6th Cir. 2004) ("The Court presumes that the district court understood its discretion to depart, absent clear evidence in the record to the contrary.") (internal quotation marks omitted). Because the New Mexico state charges were still pending against Hernandez at the time he was sentenced in this case, the district court did not know how those pending criminal charges would ultimately be resolved, nor was it in a position to order that the federal sentence it imposed on Hernandez should run concurrently with any state sentence(s) that might be subsequently imposed on Hernandez. See 18 U.S.C. § 3484(a) (outlining a district court's authority to impose concurrent or consecutive terms of imprisonment; noting that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively") (emphasis added); see also U.S.S.G. § 5G1.3 (outlining how a district court is to impose a sentence on a defendant subject to an undischarged term of imprisonment). Thus, we construe the district court's statements about "the Bureau of Prisons . . . tak[ing] it upon themselves to bring up any concurrent sentences," and "the judiciary [being] fairly constricted on what [it] can do" in that regard as referring to the fact that, by statute, it would ultimately fall within the discretion of the Bureau of Prisons to determine in Hernandez's case whether to award him credit for any time he might serve in New Mexico state prison. See 18 U.S.C. § 3585(b); see also United States v. Wilson, 503 U.S. 329, 335 (1992) ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence.").

22

We also conclude that the district court did not abuse its discretion in rejecting Hernandez's request to impose a below-Guidelines sentence on the basis of the possibility that Hernandez might be exposed to New Mexico state sentences for the same criminal conduct. As noted, the outcome of Hernandez's state criminal proceedings remained uncertain at the time of Hernandez's sentencing in this case. Thus, there was no reasonable basis from which the district court could have calculated a downward variance. Instead, it would simply have been speculating about the possible outcome and sentence(s) in Hernandez's pending state criminal cases. Moreover, as both the government and the district court noted during the sentencing hearing, Hernandez actually benefitted in terms of his federal sentencing guideline calculations from the fact that his state criminal charges remained unresolved. That is, although the pending state criminal charges were noted in the PSR, they did not increase his criminal history score or category, as would have occurred had Hernandez first been convicted in New Mexico state court and then proceeded to federal court for sentencing.

*Substantive reasonableness of sentence*

In his final argument, Hernandez asserts that the sentence imposed by the district court was substantively unreasonable. As noted, we review criminal sentences for substantive reasonableness under the abuse-of-discretion standard. United States v. Thompson, 518 F.3d 832, 869 (10th Cir. 2008). If the district court properly calculated the Guidelines range and sentenced the defendant within that range, the sentence is considered presumptively reasonable. United States v. Arrevalo-Olvera, 495 F.3d 1211,

23

1213 (10th Cir. 2007). "The defendant may rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in [18 U.S.C.] § 3553(a)." Thompson, 518 F.3d at 869 (internal quotation marks omitted; brackets in original).

It is uncontroverted that the district court in this case imposed a sentence at the bottom of the Guideline range. Accordingly, we must presume the sentence to be reasonable, and the burden is on Hernandez to rebut that presumption. In an effort to do so, Hernandez asserts that, given the impact his history of abuse as a child had on his criminal behavior, as well as the demonstrated betterment of that behavior through diagnosis, therapy and medical treatment, and in light of the lengthy consecutive sentences he faced in state court for offenses arising in large part out of the same underlying facts as his federal sentence, the eighty-four month sentence imposed by the district court was substantively unreasonable.

Hernandez raised these same arguments below and the district court expressly rejected them. To begin with, Hernandez argued to the district court at the time of sentencing that his history of physical and emotional abuse at the hands of his stepmother while growing up was a major factor in his criminal behavior and was a mitigating factor that warranted a below-Guidelines sentence. Hernandez further argued, as he does here, that he has recently improved his behavior through a combination of proper medical diagnosis of his psychological issues and treatment, including therapy and medication. The district court, however, concluded that neither factor warranted a below-Guidelines

24

sentence. With respect to Hernandez's upbringing, the district court noted he "ha[d] a very challenged background," and it expressed its "sympathy for the situation [Hernandez] w[as] put in early in life." ROA, Vol. 4 at 61. The district court noted, however, that since his childhood, Hernandez "ha[d] managed to be in trouble with the law on repeated occasions and for serious and violent acts." Id. at 62. As for Hernandez's assertion that his behavior had improved with therapy and medication, the district court noted that Hernandez's history indicated that it was "only when [he was] in custody or in some kind of supervised setting" that he consistently maintained his medication and therapy regimen. Id. at 57. Otherwise, the district court noted, "he goes off his medication and self-medicates, usually with methamphetamine." Id. Although Hernandez's counsel responded that Hernandez could "get[] into a treatment program and . . . stay[] on his medication" during a "period of supervised release," the district court concluded: "Well, sadly, supervised release doesn't guarantee any of those things, in my experience." Id. at 58.

Hernandez also argued at the time of sentencing that he was entitled to a below-Guidelines sentence because of the likelihood that he would have to serve lengthy criminal sentences in the New Mexico corrections system as a result of the same criminal behavior that gave rise to his offense of conviction and to the sentencing enhancements imposed by the district court. As we have already discussed, the district court responded to that argument by noting that Hernandez had benefitted, in terms of his Sentencing Guideline calculations, from the fact that his state criminal proceedings remained

25

outstanding. More specifically, the district court noted that, had Hernandez pled guilty or been convicted of the pending state criminal charges, his criminal history score and criminal history category under the Sentencing Guidelines would have been substantially higher, and would have resulted in a higher Guideline range. Thus, the district court concluded that a further adjustment, in the form of the imposition of a below-Guidelines sentence, was not warranted on this basis.

Hernandez has failed on appeal to establish that the district court's rejection of each of these alleged bases for departure was unreasonable. Moreover, it is worth noting that Hernandez has failed to substantially rebut the district court's conclusion at sentencing that "the seriousness of the offense [of conviction] and the protection of the public strongly" warranted the imposition of "at least the minimum guideline sentence." Id. at 62. Thus, we conclude that Hernandez has failed to rebut the presumption of reasonableness afforded to the sentence imposed by the district court.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

26